# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

In re

Case No. _____

Amended

**NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

Debtor(s)

[Do not use to sell personally identifiable information about individuals]

**NOTICE IS GIVEN** that _____, the _____ (debtor, trustee, etc.), intends to sell the property described below and moves for authority to sell the property free and clear of liens under 11 U.S.C. § 363(f) and the guidelines set forth in Local Bankruptcy Form (LBF) 363, *Procedures re: Motions for Sale of All or Substantially All Assets*. The movant's name, address, and phone number are:

_____

_____

If you wish to object to any aspect of the sale or fees disclosed in paragraph 7 or 15, you must:

1. Attend the hearing set in paragraph 16 below; and

2. Within 21 days after the later of the date next to the signature below or the service date in paragraph 17 below, file with the clerk at 1050 SW 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401:

    a. a written objection stating the specific facts upon which the objection is based, and

    b. a certificate of service of the objection on the movant.

This document constitutes the notice required by Local Bankruptcy Rule (LBR) 2002-1. All sections must be completed.

1. The specific subsections of 11 U.S.C. § 363(f) movant relies on for authority to sell the property free and clear of liens are:

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

2. Buyer's name & relation to debtor:

3. General description of the property (if real property, state street address here. Also attach legal description as an exhibit to the notice filed with the court):

4. A copy of the full property description or inventory may be examined or obtained at:

5. The property may be previewed at (include time and place):

6. Other parties to the transaction and their relationship to the debtor are:

7. The gross sale price is: $ _____.

   All liens on the property total $ _____, of which movant believes a total of $ _____ need not be paid as secured claims (because the lien is invalid, avoidable, etc., the lienholder consents to less than full payment, or part or all of the underlying debt is not allowable).

   Secured creditor(s) also seek(s) reimbursement of $ _____ for fees and costs.

   Total sales costs will be: $ _____.

   All tax consequences have been considered, and it presently appears that the sale will result in net proceeds to the estate after payment of valid liens, fees, costs, and taxes of approximately: $ _____. *Further information provided in attached Supplement.

8. The sale    is    is not (mark one) of substantially all of the debtor's assets. Terms and conditions of sale:

9. Competing bids must be submitted to the movant no later than _____ and must exceed the above offer by at least _____ and be on the same or more favorable terms to the estate. *Further information provided in attached Supplement.

10. Summary of all available information regarding valuation, including any independent appraisals:

11. If paragraph 7 indicates little or no equity for the estate, the reason for the sale is:

and expenses and taxes resulting from the sale will be paid as follows:

12. (Chapter 11 cases only) The reason for proposing the sale before confirmation of a plan of reorganization is:

13. The following information relates to lienholders (who are listed in priority order):

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid.) |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

14. Any liens not fully paid at closing will attach to the sale proceeds in the same order of priority they attach to the property. Any proceeds remaining after paying liens, expenses, taxes, commissions, fees, costs, or other charges as provided in this motion, must be held in trust until the court orders payment.

15. (If real property) The court appointed real estate broker, _____
    _____will be paid _____.

16. A hearing on this motion and any objections to the sale or fees, at which testimony will
    be received if offered and admissible, is scheduled as follows:

    **Date:**_____        **Time:** _____

    **Location**:    Courtroom #_____, _____

                     Telephone Hearing [*See LBF 888, Telephone Hearing Requirements.*]

                        **Call In Number:**  (888) 684-8852

                        **Access Code:**        5870400 for Judge David W. Hercher (dwh)

                                                1238244 for Judge Peter C. McKittrick (pcm)

                                                4950985 for Judge Teresa H. Pearson (thp)

                                                3388495 for Judge Thomas M. Renn (tmr)

                     Video Hearing. To connect, see www.orb.uscourts.gov/video-hearings.

    If no timely objection is filed, the hearing may be canceled and an order submitted.
    Parties are encouraged to check the hearing calendar at https://www.orb.uscourts.gov
    after the objection deadline has passed.

17. I certify  that on _____ this document was served, under FRBP 7004, on the
    debtor(s), trustee (if any), U.S. Trustee, each named lienholder at  the address  listed
    above, the creditors' committee chairperson (if any), and  their attorneys; and (unless
    movant  is  a  chapter  7 trustee) that  it  was  also sent on that date, pursuant  to
    FRBP 2002(a), to all creditors and all parties as listed in the court's records that were
    obtained on _____, a copy of which is attached to the document filed with the
    court.

18. For further information, contact: _____
    _____.


_____        _____
Date                    Signature & Relation to Movant

                        _____
                        (If debtor is movant) Debtor's Address & Last 4 Digits of Taxpayer ID#

                        _____


**760.5 (10/4/2021)**            Page 4 of 4

NOTICE OF INTENT TO SELL REAL OR PERSONAL PROPERTY, COMPENSATE
REAL ESTATE BROKER, AND/OR PAY ANY SECURED CREDITOR'S FEES AND
COSTS; MOTION FOR AUTHORITY TO SELL PROPERTY FREE AND CLEAR OF
LIENS; AND NOTICE OF HEARING

**Continuation Statement No. 13**

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid) |
|---|---|---|---|
| Beneficial State Bank | Beneficial State Bank<br>c/o Erich M. Paetsch<br>Saalfeld Griggs PC<br>PO Box 470<br>Salem, OR 97308-0470<br><br>Beneficial State Bank<br>c/o Kat Taylor CEO<br>1438 Webster Street, Suite 100<br>Oakland, CA 94612 | $583,018.12 | Partially Paid – *See* Plan ¶2.2A |
| U.S. Small Business Administration | U.S. Small Business Administration<br>SBA Denver Finance Center<br>Attn: Wesley J. Nell, Esq.<br>Oregon & Seattle District Offices<br>2401 Fourth Ave, Ste 400<br>Seattle, WA 98121<br><br>U.S. Small Business Administration<br>Attn: Civil Process Clerk<br>U.S. Attorney s Office,<br>Districts of Oregon<br>1000 SW Third Avenue, Suite 600<br>Portland, OR 97204<br><br>U.S. Small Business Administration<br>Attn: Attorney General of U.S.<br>10th Constitution NW #4400<br>Washington, DC 20530 | $157,875.00 | Not Paid – *See* Plan ¶2.2A |
| Mintaka Financial | Mintaka Financial LLC, fka<br>BSB Leasing<br>PO Box 2149<br>Gig Harbor, WA 98335<br><br>Mintaka Financial LLC, fka<br>BSB Leasing<br>c/o David Schaefer<br>Registered Agent<br>PO Box 2149<br>Gig Harbor, WA 98335 | $48,269.82 | Fully Paid – *See* Plan ¶2.2A |

| Name | Service Address [*See Federal Rule of Bankruptcy Procedure (FRBP) 7004*] | Approx. Lien Amount | Indicate Treatment at Closing (Fully Paid, Partially Paid, or Not Paid) |
|---|---|---|---|
| Blue Bridge Financial, LLC | Blue Bridge Financial LLC c/o Paracorp Incorporated Registered Agent 7288 Hanover Green Dr. Mechanicsville, VA 23111 | $32,421.00 | Fully Paid – *See Plan* ¶2.2A |
| Amur Equipment Finance | Amur Equipment Finance c/o Delta Management Group, Inc Attn: Mary Jane Shock, Bky Dept 2499 Rice Ste Ste 245 Saint Paul, MN 55113<br><br>Amur Equipment Finance c/o Corporation Service Company Registered Agent 1127 Broadway St., NE Ste 310 Salem, OR 97301 | $31,683.56 | Fully Paid – *See Plan* ¶2.2A |
| EBF Partners, LLC | EBF Partners, LLC c/o National Registered Agents, Inc. Registered Agent 1209 Orange Street New Castle DE 19801<br><br>EBF Partners, LLC dba Everest Business Funding 5 West 37th St. Ste. 1100 New York, NY 10018<br><br>EBF Partners, LLC Maurice Wutscher LLP 23611 Chagrin Blvd Suite 207 Beachwood, Ohio 44122 | $49,526.30 | Fully Paid – *See Plan* ¶2.2A |
| Washington County Tax Assessor | Washington County Dept. of Assessment & Taxation Attn: Ryan Birch 155 N First Ave., Ste. 130 MS8 Hillsboro, OR 97124<br><br>Washington Cty Dept. of Asses. & Taxation c/o Ellen Rosenblum, Attorney General Oregon Department of Justice 1162 Court St, NE Salem OR 97301-4096 | $7,241.47 | Fully Paid – *See Plan* ¶2.2A |

**SUPPLEMENT TO NOTICE OF INTENT TO SELL REAL OR
PERSONAL PROPERTY, COMPENSATE REAL ESTATE BROKER, AND/OR PAY
ANY SECURED CREDITOR'S FEES AND COSTS; MOTION FOR AUTHORITY TO
SELL PROPERTY FREE AND CLEAR OF LIENS; AND NOTICE OF HEARING**

**Paragraph 1.**

**SALES FREE AND CLEAR. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor states the sale will be free and clear of liens and other interests; information regarding the identity of parties holding secured claims are set forth in the Continuation Statement for Paragraph 13 and the subsections of Section 363(f) permitting the property to be sold is set forth in Paragraph 1.**

**STANDARD FOR APPROVAL. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor states it will seek approval of the Sale Motion under the 'business judgment" standard.**

**Paragraph 2.**

Debtors may accept one or more back-up offers on the Property from unrelated parties; acceptance of back-up offers is within the business judgment of the Debtor.

**REQUESTED FINDINGS AS TO SUCCESSOR LIABILITY. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), the Debtor will submit a proposed order includes findings and provisions that the buyer is a good faith purchaser.**

**AGREEMENTS WITH INSIDERS OR MANAGEMENT. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), the proposed buyer has engaged and intends to further engage in discussions regarding agreement(s) with Tiffany Miller (co-founder, CEO of the Debtor) and Carnie Wilson (co-founder of the Debtor) regarding potential employment and future services for Buyer and affiliates of Buyer for the promotion of the branding, intellectual property, and products that are to be acquired by Buyer. Debtor's counsel has engaged with Buyer directly and insiders have their own separate counsel to ensure the fairness of the sale.**

**Paragraph 3.**

Buyer proposes to acquire substantially all of Debtor's assets, with the exception of the collateral of Quality Leasing Co., Inc, pursuant to the terms of, and more specifically identified in, the Asset Purchase Agreement, by and between Buyer and

Debtor, dated March 29, 2022 (the "APA"), via private sale. A true and correct copy of the APA is attached hereto as **Exhibit 1** and is incorporated herein by this reference. In the event of any inconsistencies in the description of the terms and conditions of the APA set forth in this Notice and the terms and conditions of the APA itself, the APA shall govern.

**ASSUMPTION, ASSIGNMENT AND REJECTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor's intention is for the assignment of its real property lease (whether or not such contracts constitute executory contracts) to Buyer. Such assignment will be separately noticed for approval.**

**CLOSING, OTHER DEADLINES AND CONTINGENCIES. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor discloses the following:**

> **Confirmation of the Debtor's Proposed Small Business Plan of Reorganization on or before April 29, 2022;**

> **Closing of the sale on or before May 15, 2022.**

**RECORD RETENTION. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor states that the sale does not include Debtor's books and records and such books and records will remain available to the Debtor.**

**Paragraph 7.**

**PURCHASE PRICE. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor states that the proposed form of order and the APA include a provision regarding the Purchase Price.**

**GOOD FAITH DEPOSIT. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor states that the APA calls for a deposit of Fifty Thousand Dollars ($50,000) prior to closing. Buyer will be required to submit said good faith deposit to Debtor but said deposit may be refunded upon termination of the APA.**

**Paragraph 8.**

The proposed sale is by private sale to the listed buyer. Debtor has determined that buyer's offer is the highest and best offer. Debtor will review any back-up offers received.

**PRIVATE SALE. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor discloses that no auction is contemplated. Provided, however, the Debtor may consider any back up offer it receives.**

**RELIEF FROM FRBP 6004(h). Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor discloses that the proposed sale order includes a waiver of the 14-day stay imposed by FRBP 6004(h); such a waiver is justified by the closing date.**

### Paragraph 9.

Back-up offers for the Property will be considered by the Debtor; see also Paragraph 8.

**SOLICITATION PROCESS. Consistent with LBF 363 (Procedures Re: Motion for Sale of All or Substantially All Assets), Debtor discloses that it has met with other potential buyers but that it has not received any other bids for its assets. The estate lacks funds to further market the assets; no further actions will be taken to publicize the sale.**

### Paragraph 12.

Buyer's offer for the assets is the highest and best offer in Debtor's business judgment. There is no good reason for delay of sale; Debtor's further retention of the assets only results in continued accrual of interest on lienholder obligations and administrative expenses. In addition, sale of the assets support the Debtor's plan of reorganization as the timing and treatment of disposition of the Property no longer has to be negotiated with secured creditors.

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "*Agreement*") is made and entered March 29, 2022, by and between Love Bites by Carnie, Inc, an Oregon corporation ("*Seller*") and Love Bites Acquisition Partners, LLC, an Oregon limited liability company ("*Purchaser*").

## RECITALS:

WHEREAS, Seller is engaged in the business of creates, manufactures, and distributes confections such as cupcakes, cheesecakes, cookies, etc. and operates a café adjacent to its corporate headquarters and production facility (collectively, the "*Business*"); and

WHEREAS, on October 8, 2021 (the "*Petition Date*"), Seller filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the Oregon (the "*Bankruptcy Court*"), which case is being administered as Case No. 21-32073-dwh11 (the "*Chapter 11 Case*");

WHEREAS, Seller continues in the possession and control of its assets and properties in accordance with §§ 1107 and 1108 of the Bankruptcy Code; and

WHEREAS, Seller desires to sell to Purchaser substantially all of its assets that are used in connection with the conduct of the Business pursuant to the terms and conditions of this Agreement, and Purchaser desires to so purchase and acquire such assets from Seller, in accordance with §§ 363 and 365 of the Bankruptcy Code.

## AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing premises, the representations, warranties, covenants, and agreements contained herein, and certain other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I
## DEFINITIONS

1.1     <u>Certain Definitions</u>. As used herein, the following terms shall have the following meanings:

"*Affiliate*" means, with respect to any Person, any other Person directly or indirectly controlling, controlled by or under direct or indirect common control with such first Person where "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management policies of a Person, through the ownership of voting securities, by contract, as trustee, executor or otherwise.

"*Alternative Transaction*" means any transaction (or series of transactions) involving the direct or indirect sale, transfer or other disposition (including a liquidation) of all, or a material portion of, the Acquired Assets (excluding, in each foregoing case, the sale of inventory by Seller conducted in the ordinary course of business) to a purchaser or purchasers other than Purchaser or effecting any other transaction (including a chapter 11 plan) the consummation of which would be substantially inconsistent with the Transactions.

"*Ancillary Agreements*" means any certificate, agreement, document or other instrument to be executed and delivered in connection with this Agreement, including, but not limited to, any agreement entered into with principals of the Seller in connection with future services or activities on behalf of Purchaser.

"*Assigned Contracts*" means those Listed Contracts identified in Section 2.1(c) of Seller that are designated by Purchaser to be assumed and assigned on the Closing (provided that in the case of Executory Contracts and Unexpired Leases, Purchaser shall have provided adequate assurance of future performance under Section 365(b)(1)(C) of the Bankruptcy Code with respect thereto), together with the right to receive income in respect of such Assigned Contracts on and after the Closing Date and the right to bring any causes of action which may be brought by Seller relating to past or current breaches of the Assigned Contracts.

"*Bankruptcy Petition*" means the voluntary bankruptcy petition filed by Seller with the Bankruptcy Court on the Petition Date.

"*Books and Records*" means all books and records relating to the Acquired Assets, including but not limited to all such books of account, ledgers and general, financial and accounting records, machinery and equipment maintenance files, customer lists, customer purchasing histories, price lists, distribution lists, supplier lists, production data, quality control records and procedures, customer complaints and inquiry files, research and development files, records and data (including all correspondence with any Governmental Authorization), sales material and records (including pricing history, total sales, terms and conditions of sale, sales and pricing policies and practices), strategic plans, internal financial statements, marketing and promotional surveys, material and research, files relating to Intellectual Property, information technology system data, emails, product costing modules, accounts receivable and accounts payable documents, and production work flows; *provided* that Books and Records will not include any Seller Corporate Materials.

"*Business Day*" means any day on which commercial banking institutions are open for business in Portland, Oregon.

"*Cash Collateral Order*" means any order entered by the Bankruptcy Court authorizing Seller to use cash collateral, including that certain order dated November 5, 2021 and any amendments or extensions thereto.

"*Causes of Action*" means any and all causes of action, defenses, and counterclaims accruing to Seller or that is property of the Estate based upon facts, circumstances and transactions that occurred prior to the Closing Date, including any avoidance claims or causes of action under the Bankruptcy Code or applicable Law (including any preference or fraudulent conveyance claims) ("*Avoidance Actions*").

"*Claim*" has the meaning set forth in Section 101(5) of the Bankruptcy Code.

"*Contracts*" means all agreements, contracts, leases, consensual obligations, promises or undertakings, other than Employee Benefit Plans.

"*Cure Amounts*" means all amounts, costs and expenses required by the Bankruptcy Court to cure all defaults under the Assigned Contracts so that they may be assumed and assigned to Purchaser pursuant to Section 363 and 365 of the Bankruptcy Code.

"*Employee Benefit Plans*" means (i) all "employee benefit plans" (as defined in §3(3) of ERISA), including any employee pension benefit plans; (ii) all employment, consulting, non-competition, employee non-solicitation, employee loan or other compensation agreements, and (iii) all bonus or other incentive compensation, equity or equity-based compensation, stock purchase, deferred compensation, change in control, severance, leave of absence, vacation, salary continuation, medical, life insurance or other death benefit, educational assistance, training, service award, dependent care, pension, welfare benefit or other material employee or fringe benefit plans, policies, agreements or arrangements, whether written or unwritten, qualified or unqualified, funded or unfunded and all underlying insurance policies, trusts and other funding vehicles, in each case currently maintained by or as to which Seller has or could reasonably be expected to have any obligation or liability, contingent or otherwise, thereunder for current or former employees, directors or individual consultants of Seller.

"*Equipment*" means all equipment, machinery, materials, tools, vehicles, IT systems, hardware and software, computers and servers, telephones, machinery, materials, implements, signage, office supplies and all other tangible personal property of every kind and description.

"*ERISA*" means the Employee Retirement Income Security Act of 1974, as amended from time to time, and regulations and formal guidance issued thereunder.

"*Estate*" means the estate of Seller created by § 541 of the Bankruptcy Code upon the filing of the Bankruptcy Petition.

"*Final Order*" means an order of the Bankruptcy Court that has not been appealed, reversed, modified, amended or stayed and the time to appeal from or to seek review or rehearing of such order has expired.

"*GAAP*" means United States generally accepted accounting principles, as in effect from time to time.

"*Governmental Authorization*" means any consent, franchise, license, registration, permit, order or approval issued, granted, given or otherwise made available by or under the authority of any Governmental Body or pursuant to any Law, including, as the context may require, any declarations or filings with, or expiration of waiting periods imposed by, any such Governmental Body.

"*Governmental Body*" means any (i) nation, state, county, city, town, borough, village, district or other jurisdiction, (ii) federal, state, local, municipal, foreign or other government, (iii) governmental or quasi-governmental body of any nature (including any agency, branch, department, board, commission, court, tribunal or other entity exercising governmental or quasi-governmental powers), (iv) multinational organization or body, (v) body exercising, or entitled or purporting to exercise, any administrative, executive, judicial, legislative, police, regulatory or taxing authority or power, or (vi) official of any of the foregoing.

"*Intellectual Property*" means all trademarks, trade names, corporate names, company names, business names, product or brand names, service marks, patents, copyrights (including moral rights), and any applications for or registrations of any of the foregoing, works of authorship, know-how, logos, proprietary information, protocols, schematics, specifications, software, software code (in any form, including source code and executable or object code), subroutines, techniques, user interfaces, URLs, domain names, web sites, works of authorship and other forms of technology (whether or not embodied in any tangible form and including all

tangible embodiments of the foregoing such as instruction manuals, laboratory notebooks, prototypes, samples, studies and summaries) inventions, trade secrets, designs, manufacture and assembly instructions, and any other intellectual property or intangible property that are used in the Business as presently conducted and any rights relating to any of the foregoing.

"*Interest*" means any Lien or Claim to the extent such Lien or Claim constitutes an "interest" under § 363(f) of the Bankruptcy Code.

"*Inventory*" means all raw materials, work-in-process and finished good inventory of Seller.

"*Law*" means any applicable federal, state, local, municipal, foreign, international, multinational or other constitution, law, ordinance, principle of common law, code, regulation, statute or treaty.

"*Liability*" means any and all obligations, liabilities, debts and commitments, whether known or unknown, asserted or unasserted, fixed, absolute or contingent, matured or unmatured, accrued or unaccrued, liquidated or unliquidated, due or to become due, whenever or however arising (including whether arising out of any contract or tort based on negligence, strict lability, or otherwise) and whether or not the same would be required by GAAP to be reflected as a liability in financial statements or disclosed in the notes thereto.

"*Lien*" means any mortgage, deed of trust, lien, pledge, charge, title, defect, security interest, pledge, leasehold interest or other legal or equitable encumbrance of any kind or nature, whether secured or unsecured, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or nonmaterial, known or unknown.

"*Material Adverse Change*" means only such change, circumstance, or effect as shall have arisen after the date on which this Agreement shall have been executed by Seller and prior to the Closing that has a materially adverse effect on (i) the operations, assets, properties or condition (financial or otherwise) of the Business or the Acquired Assets taken as a whole, or (ii) the ability of any of the parties hereto to consummate the Transactions *provided*, *however*, that "Material Adverse Change" shall not include any event, occurrence, fact, condition or change, directly or indirectly, arising out of or attributable to: (a) general economic or political conditions; (b) conditions generally affecting the industries in which the Business operates; (c) any changes in financial, banking or securities markets in general; (d) any action required or permitted by this Agreement; (e) any matter of which Purchaser is aware on the date hereof; (f) any changes in applicable Laws or accounting rules (including GAAP) or the enforcement, implementation or interpretation thereof; (g) the announcement, pendency or completion of the transactions contemplated by this Agreement, including losses or threatened losses of employees, customers, suppliers, distributors or others having relationships with the Seller and the Business; or (h) acts of God (including earthquakes, storms, severe weather, fires, floods and natural catastrophes), hostilities, acts of war, sabotage or terrorism or military actions, or the Covid-19 pandemic, or any escalation or material worsening of any such hostilities, acts of war, sabotage or terrorism or military actions; *provided*, *further*, such exclusions apply solely to the extent that such event, occurrence, fact, condition, or change does not have a materially disproportionate impact on Seller as compared to other participants in the industry.

"*Person*" means any individual, corporation, partnership, joint venture, trust, association, limited liability company, unincorporated organization, other entity, or governmental body or subdivision, agency, commission or authority thereof.

"*Related Person*" means, with respect to any Person, all past, present and future directors, officers, members, managers, stockholders, employees, controlling persons, agents, professionals, financial advisors, restructuring advisors, attorneys, accountants, investment bankers, Affiliates or representatives of (i) any such Person and (ii) of any Affiliate of such Person.

"*Confirmation Hearing*" means the hearing conducted by the Bankruptcy Court to approve the Transactions as part of a plan of reorganization.

"*Seller Corporate Materials*" means all of Seller's corporate minute books and records of internal corporate proceedings, stock transfer ledgers, blank stock certificates, corporate seals, tax and accounting records, work papers and other records relating to the organization or maintenance of the legal existence of Seller.

"*Tax*" or "*Taxes*" means any federal, state, local, or foreign income, gross receipts, license, payroll, employment, excise, severance, stamp, occupation, premium, windfall profits, environmental, custom duties, capital stock, franchise, profits, withholding, social security (or similar excises), unemployment, disability, ad valorem, real property, personal property, sales, use, transfer, registration, value added, alternative or add-on minimum, estimated, or other tax of any kind whatsoever, including any interest, penalty, or addition thereto, whether disputed or not, by any governmental authority responsible for imposition of any such tax (domestic or foreign).

"*Transactions*" means the transactions contemplated by this Agreement and the Ancillary Agreements.

"*Trustee*" means any trustee or fiduciary appointed to act on behalf of Seller or as successor to Seller.

**ARTICLE II**
**SALE AND PURCHASE OF ASSETS**

2.1     <u>Sale and Purchase of Acquired Assets</u>. On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, Purchaser shall purchase from Seller, and Seller shall sell, assign, transfer, convey and deliver to Purchaser, all of Seller's right, title and interest in and to all Acquired Assets (as defined below) in existence on the Closing Date, free and clear of all Interests pursuant to and to the maximum extent permitted by Sections 363 and 365 of the Bankruptcy Code. As used herein, the term "*Acquired Assets*" means all assets, properties, rights, interests, benefits and privileges of whatever kind or nature, both tangible and intangible, real and personal wherever located, that are owned by Seller (except only for the Excluded Assets) to the extent that such assets, properties, rights, interests, benefits and privileges are transferable under applicable Law, the Bankruptcy Code or otherwise. Without limiting the generality of the foregoing, the term "*Acquired Assets*" shall include all of Seller's right, title and interest in and to the following (except to the extent any of the following are expressly included within the Excluded Assets):

        (a)     all Inventory of Seller;

(b)      the Equipment of Seller identified on <u>Schedule 2.1(a)</u> (the "*Assigned Equipment*"), and any leases relating to such Assigned Equipment (the "*Assigned Leases*");

(c)      the following Contracts (the "*Listed Contracts*") all of which shall be Assigned Contracts:

(i)      those Contracts (other than purchase orders or sales orders) identified on <u>Schedule 2.1(c)(i)</u>;

(ii)      those purchase orders (A) listed on <u>Schedule 2.1(c)(ii)</u> previously issued by Seller and which remain open on the date hereof and as of the Closing Date, and (B) hereafter issued by Seller (or for which Seller becomes bound) in the ordinary course of the Business and consistent with past practice and which remains open as of the Closing Date, as reflected on an update to such Schedule mutually agreed by Seller and Purchaser; and

(iii)      those sales orders for the sale of finished goods used in the Business accepted by Seller (or for which Seller becomes bound) in the ordinary course of the Business and consistent with past practice and which remain open as of the Closing Date as reflected on an update to such Schedule mutually agreed by Seller and Purchaser;

(d)      deposits and other prepaid amounts that relate to the Acquired Assets;

(e)      all of Seller's Books and Records; *provided* that Seller may obtain and retain copies of any or all such books and records before their transfer to Purchaser;

(f)      all Intellectual Property of Seller (to the extent assignable) and all goodwill of Seller;

(g)      all of Seller's Governmental Authorizations and all of Seller's pending applications therefor or renewals thereof, in each case solely to the extent transferable to Purchaser, and excluding Governmental Authorizations or pending applications therefor required for the continued operation of an Excluded Asset;

(h)      all of Seller's rights with respect to any confidentiality, noncompetition, non-solicitation or other similar obligations of any Person other than Seller (including any such obligations of any third party or of any current or former Related Person of Seller) that are owed to Seller or with respect to which Seller has the rights to enforce;

(i)      all Causes of Action against Purchaser, if any; and

(j)      all of Seller's other assets, properties and rights, including, but not limited to, any assets that may become part of the Estate after the execution of this Agreement (unless specifically identified as an Excluded Asset).

2.2    <u>Excluded Assets</u>. The Acquired Assets do not include, and Seller will not transfer to Purchaser, any of the following assets of Seller (the "*Excluded Assets*"):

(a)     all cash, bank deposits, securities and cash equivalents, including for this purpose all cash and cash equivalents, including ACH payments and uncleared checks and payments in transit received or initiated prior to the Closing Date;

(b)     all deposits and other prepaid amounts (including without limitation all such amounts held by Seller's advisors) other than those deposits and prepayments referenced in Section 2.1(d);

(c)     Seller's rights with respect to the bank accounts and lockbox arrangements relating to the Business, including, without limitation, the bank accounts and lockbox arrangements listed or described on Schedule 2.2(c);

(d)     other than the Assumed Contracts, all Contracts to which Seller is a party, and all rights and deposits under such Contracts;

(e)     all Seller Corporate Materials;

(f)     all rights with respect to Employee Benefit Plans and all Contracts related thereto;

(g)     any books, records or other information related solely and exclusively to the other Excluded Assets;

(h)     all refunds, credits or deposits of Taxes of Seller with respect to the period prior to the Closing Date, including any refunds, credits or deposits of Taxes;

(i)     all Causes of Action of Seller, other than Causes of Action against Purchaser, if any;

(j)     the corporate franchise of Seller and any and all prepaid expenses and deposits in respect of franchise Taxes and the like;

(k)     all property, rights and assets relating exclusively to another Excluded Asset or arising from and relating to the defense, release, compromise, discharge or satisfaction of any of the Liabilities;

(l)     all documents, emails and other communications relating to the Transactions or any preparations or planning with respect thereto, including all such materials consisting of this Agreement, the Ancillary Agreements, memoranda, research, analysis, planning, due diligence reports, quality of earnings reports, agreements with financial advisors, investment bankers, accountants or legal counsel, whether or not subject to any attorney-client privilege, work product privilege, or any other privilege (the "*Transaction-Related Documents*"), and Seller's right to exercise or waive any attorney-client privilege, work product privilege or other privilege with respect to the Transactions or any of the Transaction-Related Documents;

(m)     all rights of Seller arising under this Agreement, the Ancillary Agreements, and under any other agreement between Seller and Purchaser entered into in connection with this Agreement;

(n)     all good faith or other bid deposits submitted by any third party;

(o)     all insurance policies of any of Seller for directors', managers', and officers' liability and all rights of any nature with respect thereto, including all insurance recoveries, prepaid premiums, and unearned premiums thereunder and rights to assert claims with respect to any such insurance recoveries; and

(p)     all assets, properties and rights of Seller specifically identified on Schedule 2.2(p).

2.3     Assumed Liabilities Upon the terms and subject to the conditions set forth in this Agreement, at the Closing, Purchaser will assume and agree to pay, perform, and discharge only Seller's obligations under the Assigned Contracts that arise or are required by the terms of the Assigned Contracts to be performed after the Closing Date (only to the extent such obligations do not arise out of or in connection with any breach of contract, tort, infringement, default or nonperformance by Seller under such Assigned Contracts) (the "*Assumed Liabilities*").

2.4     Excluded Liabilities. Other than the Assumed Liabilities, Purchaser will not assume or otherwise be responsible for any Liability of Seller.

2.5     Purchase Price. The purchase price for the sale and transfer of the Acquired Assets will be an amount equal to $1,595,000.00 (the "*Purchase Price*"), payable as follows:

(a)     Purchaser will pay an initial deposit of $50,000 (the "*Deposit*");

(b)     Purchaser will further pay a portion of the Purchase Price equal to $625,000 (the "*Cash Purchase Price*"), providing that any Deposit shall be first applied to the Cash Purchase Price; and

(c)     Purchaser will execute a promissory note for the balance of the Purchase Price, substantially in the form attached as Exhibit A, reasonably acceptable to the Purchaser and Seller, and security agreement, substantially in the form attached as Exhibit B, reasonably acceptable to the Purchaser and Seller, securing the promissory note against all of the Purchaser's assets. The chapter 11 plan, Approval Order, or Ancillary Agreements will assign or otherwise provide that payments made pursuant to the promissory note will be paid in monthly installments as set forth in Schedule 2.5(c) to specified creditors of Seller.

2.6     Payments to Seller at Closing. At the Closing, subject to the terms and conditions set forth in this Agreement, Purchaser will pay to Seller, immediately available funds to an account designated in writing by Seller in an amount (the "*Closing Payment*") equal to the Cash Purchase Price after deduction of any remaining Deposit, as outlined above.

2.7     Cure Amounts for Assigned Contracts. At Closing (or, if the applicable Assigned Lease is not assigned to Purchaser at Closing, then at the time of the assignment of such Assigned Lease to Purchaser, if ever), Seller shall pay to the applicable counterparties the Cure Amounts for the Assigned Contracts.

**ARTICLE III**
**CLOSING; CONDITIONS TO CLOSING**

3.1     Closing**.** Subject to the terms and conditions of this Agreement and the satisfaction or waiver of the conditions set forth in Sections 3.2, 3.3, and 3.4, the closing (the

"*Closing*") of the sale and purchase of the Acquired Assets shall take place no less than 1 Business Day after the Approval Order becomes a Final Order, if the conditions to Closing set forth below have been met (or waived) on such date, or such other date as Seller and Purchaser may agree, but in any event on or before the Outside Date if such conditions have been met (or waived) by such date, by the electronic exchange of documents. The time and date upon which the Closing occurs is referred to herein as the "*Closing Date*." All transactions at the Closing shall be deemed to take place simultaneously and none shall be deemed to have taken place until all shall have taken place.

3.2    Court Approval Required. Purchaser and Seller acknowledge and agree that the Bankruptcy Court's entry of the Approval Order shall be required in order to consummate the Transactions, and that the requirement that the Approval Order be entered is a condition that cannot be waived by any party.

3.3    Conditions to Obligations of Purchaser. The obligation of Purchaser to consummate the Transactions is subject to the satisfaction, at or before the Closing, of each of the following conditions, any of which conditions may be waived by Purchaser in its sole discretion:

(a)    Representations and Warranties. The representations and warranties of Seller set forth in Article IV of this Agreement shall be true and correct in all material respects (except for those representations and warranties qualified by materiality, which shall be true and correct in all respects) on and as of the Closing Date as though made on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date).

(b)    Agreements and Covenants. Seller shall have performed and complied with each agreement, covenant and obligation required to be performed or complied with by it under this Agreement at or before the Closing in all material respects.

(c)    Material Adverse Change. No Material Adverse Change shall have occurred and be continuing.

(d)    No Appeal of Approval Order. No Person shall have appealed the Approval Order, or if any such notice of appeal has been given, the Approval Order shall have become a Final Order.

(e)    Payment of the Cure Amounts. Seller shall have provided proof of payment of all Cure Amounts, in form reasonably satisfactory to Purchaser (other than with respect to any Cure Amount that relates to an Assigned Lease that is not assigned to Purchaser at Closing, for which Seller shall provide proof promptly after payment of the related Cure Amount).

(f)    Deliveries at Closing. At the Closing, Seller shall deliver, or cause to be delivered, to Purchaser all of the following:

(i)    A certificate from Seller executed by a duly authorized officer thereof certifying to the matters set forth in Section 3.3(a) through 3.3(c).

(ii)     A bill of sale and intellectual property assignments with respect to the Acquired Assets being conveyed by Seller (the "*Bill of Sale*"), duly executed by Seller.

(iii)     An assignment and assumption agreement (the "*Assignment and Assumption Agreement*"), effecting the assignment to and assumption by Purchaser of the Assigned Contracts and the Assumed Liabilities, duly executed by Seller;

(iv)     A certificate of non-foreign status executed by Seller, prepared in accordance with Treasury Regulation Section 1.1445-2(b).

3.4     <u>Conditions to Obligations of Seller</u>. The obligation of Seller to consummate the Transactions is subject to the satisfaction, at or before the Closing, of each of the following conditions, any of which conditions may be waived by Seller in its sole discretion:

(a)     <u>Representations and Warranties</u>. The representations and warranties of Purchaser set forth in <u>Article V</u> of this Agreement shall be true and correct in all material respects (except for those representations and warranties qualified by materiality, which shall be true and correct in all respects) on and as of the Closing Date as though made on and as of the Closing Date (except for representations and warranties made as of a specified date, which shall be true and correct only as of the specified date).

(b)     <u>Agreements and Covenants</u>. Purchaser shall have performed and complied with each agreement, covenant and obligation required to be performed or complied with by it under this Agreement at or before the Closing in all material respects.

(c)     <u>Receipt of the Closing Payment</u>. Seller shall have received the Closing Payment from Purchaser.

(d)     <u>Deliveries at Closing</u>. At the Closing, Purchaser shall deliver, or cause to be delivered, to Seller each of the following:

(i)     The Bill of Sale, duly executed by Purchaser.

(ii)     The Assignment and Assumption Agreement, duly executed by Purchaser.

## ARTICLE IV
## REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser, with respect to itself only, severally and not jointly, that the statements contained in this <u>Article IV</u> are true and correct as of the date hereof.

4.1     <u>Organization, Good Standing and Power</u>. Seller is legally formed and in good standing under the law of the State of Oregon. Subject to the applicable provisions of the Bankruptcy Code, Seller has the power to own its properties and carry on its business as now being conducted and is qualified to do business and is in good standing in each jurisdiction in which the failure to be so qualified and in good standing would result in a Material Adverse Change.

4.2     Authority Relative to this Agreement; Execution and Binding Effect. Seller has all necessary corporate power and authority to execute and deliver this Agreement and the Ancillary Agreements and, subject to receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code, to consummate the Transactions applicable to Seller. The execution and delivery of this Agreement and the Ancillary Agreements and the consummation of the Transactions have been duly and validly approved and adopted by appropriate governing body of Seller, and, except for Bankruptcy Court approval or as set forth on Schedule 4.4, no other proceedings or approvals on the part of Seller are necessary to approve this Agreement and the Ancillary Agreements and to consummate the Transactions. This Agreement has been duly and validly executed and delivered by Seller. Assuming due authorization, execution and delivery by Purchaser, this Agreement constitutes, and each of the Ancillary Agreements at the Closing will constitute, the valid and binding obligation of Seller, enforceable against Seller in accordance with their terms, except as such enforcement may be limited by (a) the effect of bankruptcy, insolvency, reorganization, receivership, conservatorship, arrangement, moratorium or other laws affecting or relating to the rights of creditors generally, or (b) the rules governing the availability of specific performance, injunctive relief or other equitable remedies and general principles of equity, regardless of whether considered in a proceeding in equity or at law.

4.3     No Defaults. Subject to receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code and except as set forth on Schedule 4.3, the execution and delivery by Seller of this Agreement and the Ancillary Agreements and the consummation of the Transactions do not and will not (a) with or without the giving of notice or the lapse of time, or both, conflict with, or result in the breach of or constitute a default under, or result in the modification, cancellation, lapse or termination of, or limitation, or curtailment under, or violate any (i) provision of applicable Law, or (ii) Contract, Employee Benefit Plan, power of attorney, commitment, instrument, insurance policy, arrangement, undertaking, order, decree, ruling or injection to which Seller is subject or a party or by which it is bound (or with respect to which its properties or assets are subject or bound), except for any breach, default, modification, cancellation, lapse, termination, limitation, curtailment or violation that would not result in a Material Adverse Change; or (b) violate the certificate of incorporation or bylaws of Seller.

4.4     Governmental and Other Consents. Except for the receipt of any necessary Bankruptcy Court approval in accordance with the Bankruptcy Code or as set forth on Schedule 4.4, no consent, notice, authorization or approval of, or exemption by, or filing with or notifications to any Governmental Authority or any other Person, whether pursuant to contract or otherwise, is required in connection with the execution and delivery by Seller of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

4.5     No Brokers. Seller has not incurred and will not incur, directly or indirectly, as a result of any action taken or permitted to be taken by or on behalf of Seller, any Liability for brokerage or finders' fees or agents' commissions or similar charges in connection with the execution and delivery by Seller of this Agreement and the Ancillary Agreement and the consummation of the Transactions.

## ARTICLE V
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller that the statements contained in this Article V are true and correct as of the date hereof.

5.1    Organization, Good Standing and Power. Purchaser is legally formed and in good standing under the laws of the state of its formation. Purchaser has the power to own its properties and carry on its business as now being conducted and is qualified to do business and is in good standing in each jurisdiction in which the failure to be so qualified and in good standing would result in a Material Adverse Change.

5.2    Authority Relative to this Agreement; Execution and Binding Effect. Purchaser has full power and authority to execute and deliver this Agreement and the Ancillary Agreements and to consummate the Transactions. The execution and delivery of this Agreement and the Ancillary Agreements and the consummation of the Transactions have been duly and validly approved and adopted by all necessary action of Purchaser and no other proceedings or approvals (shareholder, member or otherwise) on the part of Purchaser are necessary to approve this Agreement and the Ancillary Agreements and to consummate the Transactions. This Agreement has been duly and validly executed and delivered by Purchaser. Assuming due authorization, execution and delivery by Seller, this Agreement constitutes, and each of the Ancillary Agreements at the Closing will constitute, the valid and binding obligation of Purchaser, enforceable against Purchaser in accordance with their terms, except as such enforcement may be limited by (a) the effect of bankruptcy, insolvency, reorganization, receivership, conservatorship, arrangement, moratorium or other laws affecting or relating to the rights of creditors generally, or (b) the rules governing the availability of specific performance, injunctive relief or other equitable remedies and general principles of equity, regardless of whether considered in a proceeding in equity or at law.

5.3    No Brokers. Purchaser has not incurred and will not incur, directly or indirectly, as a result of any action taken or permitted to be taken by or on behalf of Purchaser, any Liability for brokerage or finders' fees or agents' commissions or similar charges in connection with the execution and delivery by Purchaser of this Agreement and the Ancillary Agreements and the consummation of the Transactions.

**ARTICLE VI**
**COVENANTS**

6.1    Operation of Business. Subject to the requirements of, and the obligations imposed upon, Seller as debtor-in-possession and pursuant to the Bankruptcy Code and except as otherwise contemplated by the Agreement or as required to comply with the Cash Collateral Order, from the date hereof and until the Transactions shall have been consummated or abandoned as contemplated herein, Seller shall operate the Business in the ordinary course and, consistent with such operation and the budget set forth in connection with the Cash Collateral Order, and consistent with acting as a debtor-in-possession in a Chapter 11 bankruptcy case, shall use commercially reasonable efforts to maintain the goodwill associated with the Business and the relationships with the employees, customers, and suppliers of the Business.

6.2    Approval Order.

(a)    Prior to the Closing, and subject to the provisions of this Agreement, Purchaser and Seller shall use their commercially reasonable efforts to obtain entry of an order or orders by the Bankruptcy Court confirming a Chapter 11 plan of reorganization pursuant to Section 1191 consistent with the terms of the Transaction (the "*Approval Order*").

(b)     If the Approval Order or any other orders of the Bankruptcy Court relating to this Agreement shall be appealed by any person (or a petition for certiorari or motion for rehearing or reargument shall be filed with respect thereto), each party hereto agrees to use commercially reasonable efforts to obtain an expedited resolution of such appeal; *provided*, *however*, that nothing herein shall preclude the parties hereto from consummating the Transactions if the Approval Order shall have been entered and has not been stayed in which event Purchaser shall be able to assert the benefits of § 363(m) of the Bankruptcy Code.

6.3     <u>Access to Facilities, Personnel, and Information</u>.

(a)     Following the date hereof, Seller shall permit representatives of Purchaser to have reasonable access during regular business hours and upon reasonable notice, and in a manner so as not to interfere with the normal business operations of Seller, to management personnel of Seller and to all premises, property, books, records (including Tax records), Contracts, and documents of or pertaining to the Business which are under Seller's control (provided that any representatives of Purchaser shall be subject to the confidentiality obligations under the Confidentiality Agreement or otherwise agree in writing to be bound by the terms of such Confidentiality Agreement applicable to Purchaser thereunder).

(b)     From the Closing Date through and including the second anniversary of the Closing Date, Purchaser shall grant Seller, any Trustee, and their respective representatives reasonable access to the books and records transferred to Purchaser pursuant to this Agreement during regular business hours and upon reasonable notice for the purpose of allowing Seller or its successor, such Trustee, or their respective representatives to perform the duties necessary for the liquidation of Seller's Estate (including preparing tax filings and collecting accounts receivable of Seller). To the extent reasonably required by Seller, Purchaser shall make one or more of its employees available to Seller to assist in Seller's wind-down of its Estate provided that such access does not unreasonably interfere with the conduct of the Business by Purchaser.

6.4     <u>Further Assurances</u>. At the Closing, Seller shall, upon Purchaser's request, execute and deliver to Purchaser such other instruments of transfer as shall be reasonably necessary to vest in Purchaser title to the Acquired Assets, and Seller, on the one hand, and Purchaser, on the other hand, shall use its commercially reasonable efforts to take, or cause to be taken, all appropriate action, do or cause to be done all things necessary under applicable Law, and execute and deliver such instruments and documents and to take such other actions, as may be required to consummate the Transactions at or after the Closing; *provided* that nothing shall prohibit Seller from ceasing operations or winding up its affairs following the Closing. In furtherance and not in limitation of the foregoing, in the event that any of the Acquired Assets shall not have been conveyed at Closing, Seller shall use commercially reasonable efforts to convey such Acquired Assets to Purchaser as promptly as practicable after the Closing.

6.5     <u>Employee Matter</u>.

(a)     Purchaser may (but is not obligated to) make offers of ongoing or short-term employment to any employee of Seller in Purchaser's sole discretion (such employees who are hired by Purchaser, the "*Transferred Employees*"). Seller shall

terminate the employment of all Transferred Employees employed by Seller as of immediately prior to the Closing and reasonably assist Purchaser to effect the change of employment of such Transferred Employees as of the Closing in an orderly fashion. Purchaser's obligations under this Agreement are not conditioned upon any particular employees agreeing to employment with Purchaser. Seller hereby agrees that Purchaser's employment of any Transferred Employee will not violate the rights of Seller or any of its Affiliates with respect to any noncompetition or similar restriction otherwise applicable to any Transferred Employee.

(b)     Seller and Purchaser agree that with respect to the Transferred Employees, pursuant to the "Alternate Procedure" provided in Section 5 of Revenue Procedure 2004-53, with respect to the filing and furnishing of IRS Forms W-2, W-3, W-4 and W-5 and 941, (i) Seller shall report, and Purchaser shall report, on a "predecessor-successor" basis as set forth therein, (ii) Seller shall be relieved from furnishing Forms W-2 to Transferred Employees for the current calendar year, and (iii) Purchaser shall assume the obligations of Seller to furnish such forms to such Transferred Employees for the full current calendar year; *provided*, that Seller timely provides Purchaser with all necessary payroll records for 2022.

(c)     Nothing in this Agreement shall constitute any commitment, Contract or understanding (expressed or implied) of any obligation on the part of Purchaser to a post-Closing employment relationship of any fixed term or duration or upon any terms or conditions other than those that Purchaser may establish pursuant to individual offers of employment.

(d)     Nothing in this Agreement shall be deemed to prevent or restrict in any way the right of Purchaser to terminate, reassign, promote or demote any of the Transferred Employees after the Closing or to change adversely or favorably the title, powers, duties, responsibilities, functions, locations, salaries, future benefits, other compensation or terms or conditions of Purchaser's employment of such employees.

6.6     <u>Tax Matters</u>.

(a)     All sales, use, transfer, stamp, conveyance, value added or other similar Taxes, duties, excises or governmental charges imposed by any Tax authority, domestic or foreign, and all recording or filing fees, notarial fees and other similar costs of Closing will be borne by Purchaser.

(b)     Within 60 days following the Closing Date, Purchaser will prepare (in accordance with Section 1060 of the Internal Revenue Code and the Treasury Regulations promulgated thereunder (and any similar provisions of state, local, or foreign law, as appropriate)) and deliver to Seller a draft Form 8594 allocating the Purchase Price among the Acquired Assets. Seller shall be entitled to review and comment on such schedule for a period of 30 days, and Purchaser and Seller shall thereafter agree to allocations of the Purchase Price within 15 days. Thereafter, Purchaser shall provide Seller with Purchaser's final Form 8594. Neither Purchaser nor Seller shall take any position (whether in audits, tax returns or otherwise) that is inconsistent with Purchaser's final allocation schedule. Purchaser and Seller shall file all tax returns (including amended returns and claims for refund) and information reports in a manner consistent with such allocation.

(c)     Seller acknowledges and agrees that it is a US Person within the meaning of Internal Revenue Code Section 1445.

**ARTICLE VII**
**TERMINATION; EFFECT OF TERMINATION**

7.1     <u>Termination</u>. This Agreement may, by notice given prior to or at the Closing be terminated:

(a)     by mutual consent of Purchaser and Seller;

(b)     by either Purchaser or Seller:

(i)     if the Bankruptcy Court rules that it does not approve this Agreement for any reason or if a Governmental Body issues a final, non-appealable ruling or Final Order permanently prohibiting the Transactions, *provided, however*, that the right to terminate this Agreement pursuant to this <u>Section 7.1(b)(i)</u> shall not be available to any party whose breach of any of its representations, warranties, covenants or agreements contained herein results in such ruling or Final Order;

(ii)     if the Closing shall not have occurred by the close of business on May 16, 2022 (the "*Outside Date*"); *provided* that the right to terminate this Agreement pursuant to this <u>Section 7.1(b)(ii)</u> shall not be available to any party hereto whose breach of any of its representations, warranties, covenants or agreements contained herein results in the failure of the Closing to be consummated by such time;

(iii)     if (A) the Confirmation Hearing is not held on or before April 1, 2022; *provided, however*, if the Confirmation Hearing is delayed due to the Bankruptcy Court's unavailability, the next Business Day on which the Bankruptcy Court is available, or (B) the Bankruptcy Court has not entered the Approval Order on or before April 29, 2022; *provided, however,* if approval of the Approval Order is delayed due to the Bankruptcy Court's unavailability, the next Business Day on which the Bankruptcy Court is available;

(iv)     if the Approval Order is vacated; or

(v)     if Seller (A) files any stand-alone plan of reorganization or liquidation that does not contemplate, the implementation or consummation of, the Transactions or (B) consummates an Alternative Transaction; or

(c)     by Purchaser:

(i)     in the event of any breach by Seller of any of its material agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in <u>Article III</u> to be satisfied, and the failure of Seller to cure such breach by the earlier of (A) the Outside Date, and (B) the date that is ten (10) days after receipt of a Purchaser Termination Notice; *provided, however,* that (1) Purchaser is not in breach of any of its representations, warranties, covenants or agreements contained herein in a

manner that would result in the failure of a condition set forth in Article III to be satisfied, (2) Purchaser notifies Seller in writing (the "*Purchaser Termination Notice*") of its intention to exercise its rights under this Section 7.1(c)(i) as a result of the breach, and (3) Purchaser specifies in the Purchaser Termination Notice the representation, warranty, covenant or agreement contained herein of which Seller are allegedly in breach and the specific facts giving rise to such allegation of breach;

(ii)     if the Chapter 11 Case is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; or

(iii)     if any conditions to the obligations of Purchaser set forth in Article III shall have become permanently incapable of fulfillment other than as a result of a breach by Purchaser of any representation, warranty, covenant or agreement contained in this Agreement; or

(d)     by Seller:

(i)     except as provided in Section 7.1(d)(ii), in the event of any breach by Purchaser of any of its agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Article III to be satisfied, and the failure of Purchaser to cure such breach by the earlier of (A) the Outside Date, and (B) the date that is ten (10) days after receipt of the Seller Termination Notice; *provided, however,* that Seller (1) is not itself in material breach of any of its representations, warranties, covenants or agreements contained herein, (2) notifies Purchaser in writing (a "*Seller Termination Notice*") of its intention to exercise its rights under this Section 7.1(d)(i) as a result of the breach, and (3) specifies in the Seller Termination Notice the representation, warranty, covenant or agreement contained herein of which Purchaser is allegedly in breach and the specific facts giving rise to such allegation of breach; or

(ii)     if the Approval Order with respect to the Transactions has been entered and is not subject to any stay on enforcement and (A) Seller has provided Purchaser with written notice that it is prepared to consummate the Transactions, (B) the conditions to Closing in Article III have been satisfied (or waived by Purchaser), other than those conditions that by their nature can only be satisfied at Closing, and (C) the Closing Date does not occur within three Business Days of Seller providing Purchaser with such notice.

7.2     Effect of Termination. If this Agreement is terminated pursuant to Section 7.1, then (a) Purchaser shall have no Liability or obligations under this Agreement, and (b) Seller shall not have any Liabilities under this Agreement; *provided*, *however*, that the obligations in Section 8.1 shall survive.

**ARTICLE VIII
GENERAL PROVISIONS**

8.1     Transaction Expenses. Except as expressly provided for herein, each party shall pay all fees, costs and expenses incurred by it with respect to this Agreement, whether or not the Transactions are consummated.

8.2     Certain Interpretive Matters and Definitions. Unless the context requires, (a) references to the plural include the singular and references to the singular include the plural, (b) references to any gender includes the other gender, (c) the words "include," "includes" and "including" do not limit the preceding terms or words and shall be deemed to be followed by the words "without limitation", (d) the terms "hereof", "herein", "hereunder", "hereto" and similar terms in this Agreement refer to this Agreement as a whole and not to any particular provision of this Agreement, and (e) all references to Sections, Articles, Exhibits or Schedules are to Sections, Articles, Exhibits or Schedules of or to this Agreement.

8.3     Termination of Representation and Warranties. The representations and warranties of the parties set forth in this Agreement shall terminate and be of no further force or effect after the Closing.

8.4     Amendment. This Agreement may be amended or modified in whole or in part at any time by an agreement in writing among the parties.

8.5     Waiver. The waiver by a party of a breach of any covenant, agreement, condition or undertaking contained herein shall be made only by a written waiver in each case. No waiver of any breach of any covenant, agreement, condition or undertaking contained herein shall operate as a waiver of any prior or subsequent breach of the same covenant, agreement, condition or undertaking or as a waiver of any breach of any other covenant, agreement, condition or undertaking.

8.6     Notices. All notices, request and other communications hereunder will be deemed to have been duly given if delivered personally, by an established overnight delivery company, or by certified or registered mail, postage prepaid, return receipt requested as follows:

If to Seller:

      Love Bites by Carnie, Inc.
      c/o Vanden Bos & Chapman, LLP
      319 SW Washington Street, Suite 520
      Portland, OR 97204
      Attention: Douglas R. Ricks
      E-mail: doug@vbcattorneys.com

      with a copy to (which will not constitute notice):

      Kenneth S. Eiler, Trustee
      515 NW Saltzman Rd., PMB 810
      Portland, OR 97201
      Attention: Ken Eiler
      E-mail: kenneth.eiler7@gmail.com

If to Purchaser:

      Love Bites Acquisition Partners, LLC
      301 SE 2nd Ave.
      Portland, OR 97214
      Attention: Rich Arnold
      Email: rich@driveequitypartners.com

or to such other address as may hereafter by designated by a party by the giving of notice in accordance with this Section 8.6. All notices, request or other communications shall be deemed given when actually delivered personally or by an established overnight delivery company or upon actual receipt if delivered by certified or registered mail, postage prepaid, return receipt requested.

8.7    Jurisdiction. The parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement or the implementation or breach hereof.

8.8    Governing Law. To the extent not governed by the Bankruptcy Code, this Agreement shall be governed by and construed in accordance with the laws of the State of Oregon, without giving effect to rules governing the conflict of laws.

8.9    Time is of the Essence. Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

8.10    Severability. If any provision of this Agreement shall be held invalid, illegal or unenforceable, in whole or in part, the validity, legality, and enforceability of the remaining part of such provision, and the validity, legality and enforceability of all other provisions hereof or thereof, shall not be affected thereby.

8.11    Titles and Headings. Titles and headings of sections of this Agreement are for convenience of reference only and shall not affect the construction of any provision of this Agreement.

8.12    Assignment; Successors and Assigns. This Agreement and the rights, duties and obligations hereunder may not be assigned by Seller without the prior written consent of Purchaser, and any attempted assignment without consent shall be void. Subject to this Section 8.12, this Agreement and the provisions hereof shall be binding upon each of the parties, their successors and permitted assigns.

8.13    No Third-Party Rights. The parties do not intend to confer any benefit hereunder on any Person other than the parties hereto.

8.14    Entire Agreement. This Agreement and the Ancillary Agreements constitute the entire agreement between the parties regarding the subject matter hereof and no extrinsic evidence whatsoever may be introduced in any proceeding involving this Agreement or the Ancillary Agreements.

8.15    Execution of this Agreement. This agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same agreement. The exchange of copies of this Agreement and of signature pages by electronic transmission shall constitute effective execution and delivery of this Agreement as to the parties and may be used in lieu of the original Agreement for all purposes. Signatures of the parties transmitted by electronic transmission shall be deemed to be their original signatures for all purposes.

*** *Signature page follows* ***

IN WITNESS WHEREOF, the parties have caused their duly authorized officers to execute this Agreement as of the date and year first written above.

**SELLER**:

**LOVE BITES BY CARNIE, INC.**


Tiffany Miller (Mar 29, 2022 13:24 PDT)

By: Tiffany Miller
Its: Chief Executive Officer

**PURCHASER:**

**LOVE BITES ACQUISITION PARTNERS, LLC**

*RWArnold*
RWArnold (Mar 29, 2022 13:28 PDT)

By: Rich Arnold
Its: Member

**EXHIBIT A**

**Promissory Note**

**EXHIBIT 1 - Page  20 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

**SECURED PROMISSORY NOTE**
**(Maker: Love Bites Acquisition Partners, LLC)**

**$970,000.00**                                                    Date:_____

## SECTION 1.          DEBT AND PAYMENT TERMS.

    **1.1**     FOR VALUE RECEIVED, the undersigned ("Maker") promises to pay to the order of Love Bites by Carnie, Inc. or its successor or assigns ("Holder") at the following address: c/o Kenneth S. Eiler, Trustee, 515 NW Saltzman Rd., PMB 810, Portland, OR 97201, or at such other place as the Holder may from time to time designate in writing, the sum of Nine Hundred Seventy Thousand and 00/100 Dollars ($970,000.00) in lawful money of the United States without interest thereon from the date of this Note until paid. This note memorializes a transaction that occurred on May __, 2022, when Holder transferred assets to Maker for the sum of $1,595,000.00 in exchange for cash consideration and this Note and Security Interest in the assets transferred. Said transaction was administered as part of Holder's Chapter 11 bankruptcy case and, specifically, a confirmed Small Business Plan of Reorganization (the "Reorganization Plan").

    **1.2**     **Payments.** The undersigned shall make payments to Holder as follows:

    **1.2.1 Payments.** Installment payments shall be paid by the Maker with monthly payments commencing in June 2022 in the amounts and at the times provided on **Schedule 1**, attached hereto. The entire balance of this Note shall be paid in full on or before December 31, 2026, including principal, accrued and unpaid interest, any collection costs, and any late payment penalties.

    **1.2.2 Application of Payments.** All payments shall first be applied to collection costs as provided herein, then to any late payment penalties, then to accrued and unpaid interest, if any, and the balance to principal.

    **1.2.3 No Prepayment Penalty.** At any time during the term of this Note, the undersigned shall have the right to prepay this Note without any Prepayment Penalty. In the event of a partial prepayment by the Maker, the Maker may designate the application of such prepayment by Holder under the terms of Holder's Reorganization Plan.

## SECTION 2.          ADDITIONAL PARTIES AND TERMS.

    The holder hereof may, without prior notice to the undersigned, cause additional parties to be added hereto, release any party hereto, extend or renew this Note, extend the time for making any payment provided for herein, or accept any installment in advance, without affecting the liability of the undersigned.

## SECTION 3.          EVENTS OF DEFAULT; CROSS-DEFAULT.

The following shall constitute Events of Default:

    **3.1**     **Nonpayment**. Failure of the undersigned to make any payment provided herein when due.

**3.2    Other Obligations**. Failure of the undersigned to make any payment or perform any obligation required by any other document evidencing or securing any indebtedness or obligation of the undersigned, or on any debt to Holder guaranteed by the undersigned, or any of them, to the Holder of this Note, including, but not limited to, default under any security agreement or pledge agreement given to secure payment of this Note, or default under any other instrument or agreement made by the undersigned in connection with the indebtedness evidenced by this Note.

## SECTION 4.        TIME IS OF THE ESSENCE.

Time is of the essence of this Note. Any payment designated to be made to the holder hereof under this Note or under any other agreement between the parties and designated in section 3.2, shall not be deemed to have been timely made unless actually received by the holder hereof on or before 11:59 p.m. of the stated due date.

## SECTION 5.        REMEDIES IN CASE OF DEFAULT.

**5.1**    If an Event of Default shall occur, the holder of this Note may exercise any of the following rights and remedies, in addition to any other remedies which may be available at law, in equity, or otherwise:

**5.1.1  Acceleration and Interest Default Rate.** The Holder of this Note may declare the entire unpaid principal and interest, and any other sums payable pursuant to this Note or any obligation owed by Maker to Holder immediately due and collectible. In addition, and whether the Holder of this Note have or have not made such a declaration, the entire unpaid principal balance and any other charges payable by the undersigned pursuant to the Loan Documents (including, but not limited to, the late charges provided below from the date of assessment) shall bear interest at a rate of five percent (5%) higher than the rate provided in Section 1 above (this adjusted rate shall be referred to as the "Default Rate" and the additional interest shall be referred to as the "Default Interest"), but in no event to exceed the maximum rate permitted by law, which Default Rate shall run from the date of the actual Event of Default (without regard to when the Holder of this Note discovers such Default) and shall continue until all Events of Default have been fully cured, including, but not limited to, the payment by the undersigned of all unpaid and accrued Default Interest.

## SECTION 6.        SECURITY; NO TRANSFER WITHOUT CONSENT.

**6.1**    This obligation is secured by, among other instruments, a Security Agreement pledging a security interest more fully described in the Security Agreement and a Uniform Commercial Code filing with the Oregon Secretary of State.

**6.2**    A SALE, TRANSFER, ALIENATION OR ENCUMBRANCE OF THE COLLATERAL WITHOUT THE PRIOR WRITTEN CONSENT OF THE HOLDER HEREOF, WHICH CONSENT MAY BE GIVEN OR WITHHELD IN THE SOLE AND ABSOLUTE DISCRETION OF THE HOLDER HEREOF, SHALL BE A DEFAULT HEREUNDER AND UPON SUCH DEFAULT, ALL PRINCIPAL AND INTEREST, AT THE OPTION OF THE HOLDER OF THIS NOTE, SHALL BECOME IMMEDIATELY DUE AND PAYABLE.

## SECTION 7.        ATTORNEY FEES AND COSTS.

**EXHIBIT 1 - Page  22 of 43**

PAGE   2  -  SECURED PROMISSORY NOTE

In the event of a default under this Note, the undersigned agrees to pay all costs and expenses which may be incurred by the holder with respect to such default, including without limitation all costs and expenses of investigating the same and circumstances and events surrounding or relating thereto, fees charged by and expenses of professional consultants and advisers, including attorneys and accountants, costs of title searches and premiums for title reports and all other costs and expenses. Attorney fees shall include costs and expenses of legal advice with respect to the event of default, rights and remedies, negotiations with the undersigned and any other parties in interest, such as guarantors, other encumbrances, receivers, trustees, and the like, and attorney fees and expenses with respect to any action which the holder may commence or in which the holder might appear, whether for the purpose of protecting or preserving the holder's rights or to realize upon the lien of any security interest upon real or personal property, or both, by foreclosure or otherwise, including, but not limited to, any action or participation as a debtor by the undersigned in, or in connection with, a case or proceeding under the Bankruptcy Code or any successor statute, and all attorney fees and expenses in any review of or appeal from any such action. All costs, fees, or expenses herein referred to shall be reasonable. Such fees and costs may, at the option of the holder, be added to the principal balance of this Note.

## SECTION 8.    LATE PAYMENT CHARGES.

**8.1**    If the undersigned fails to pay any installment payment within fifteen (15) days after the due date, or by the next business day, if the fifteen (15) day period ends on a Saturday, Sunday, or legal holiday, the holder may assess a late charge equal to ten percent (10%) of the payment not paid when due. Said late charge shall be paid on demand, and the holder hereof reserves the right (a) to refuse any late payment unless accompanied by such late charge, or (b) to add such late charge to the principal balance of the Note. The acceptance of a late charge shall not constitute a waiver of any remedies available to the holder of this Note arising from an Event of Default.

## SECTION 9.    WAIVER OF PRESENTMENT FOR PAYMENT, NOTICE OF DISHONOR, PROTEST AND NOTICE OF PROTEST; NO COMMITMENT FOR ADVANCES.

**9.1**    All persons liable either now or hereafter for the payment of this Note severally waive presentment, demand for payment and notice of nonpayment thereof.

**9.2**    All parties liable under this Note hereby consent to, and the holder hereof is hereby expressly authorized to make, without notice, any and all renewals, extensions, modifications, or waivers of the time for or the terms of payment of any sum or sums due hereunder, or under any documents or instruments relating to or securing this Note, or of the performance of any covenants, conditions or agreements hereof or thereof or the taking or release of collateral securing this Note. Any such action taken by the holder of this Note shall not discharge the liability of any party to this Note.

## SECTION 10.    NON-WAIVER.

Failure to exercise any option to declare a default or accelerate the balance due hereon shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Modification of the terms of payment of this Note made at the request of any person liable thereof shall not impair such person's liability or the liability of any other person now or hereafter liable for the payment hereof.

**EXHIBIT 1 - Page  23 of 43**

PAGE   3 - SECURED PROMISSORY NOTE

# SECTION 11.    NOTICE.

11.1    All notices, requests, demands and other communications given or required to be given hereunder shall be in writing and personally delivered or sent by United States registered or certified mail, return receipt requested, postage prepaid or sent by a nationally recognized courier service such as Federal Express, duly addressed to the Parties as follows:

**To the Undersigned:**

Love Bites Acquisition Partners, LLC
c/o ███████████

**To the Holder:**

Love Bites by Carnie, Inc.
c/o Vanden Bos & Chapman, LLP
319 SW Washington, Suite 520
Portland, OR 97204

**With a Copy to Holder:**

Love Bites by Carnie, Inc.
c/o Kenneth S. Eiler, Trustee
515 NW Saltzman Rd., PMB 810
Portland, OR 97201

11.2    Any notice or other communication hereunder shall be deemed given on the date of actual delivery thereof to the address of the addressee, if personally delivered, and on the date indicated in the return receipt or courier's records as the date of delivery or as the date of first attempted delivery to the address of the addressee, if sent by mail or courier service (such as Federal Express). Notice may also be given by telecopier or facsimile to any party having a telecopier or facsimile machine compatible with the telecopier or facsimile machine of the party sending the notice. Any notice given by telecopier or facsimile shall be deemed delivered when received by the telecopier or facsimile machine of the receiving party if received before 5:00 p.m. (Pacific Time) on the business day received, or if received after 5:00 p.m. (Pacific Time), or if telecopied on a day other than a business day (i.e., a Saturday, Sunday or legal holiday), then such notice shall be deemed delivered on the next following business day. The transmittal confirmation receipt produced by the telecopier or facsimile machine of the sending party shall be prima facie evidence of such receipt. Any party may change its address or telecopier or facsimile number for purposes of this Subsection by giving notice to the other party. If a "copy party" is designated, service of notice shall not be deemed given to the designated party unless and until the "copy party" is also given such notice in accordance with this Subsection.

# SECTION 12.    GOVERNING LAW.

12.1    This Note shall at all times be governed by the laws of the State of Oregon. The undersigned agrees that this Note may be enforced in the courts of the State of Oregon and the undersigned hereby consents to the jurisdiction thereof.

# SECTION 13.    ENFORCEABILITY.

**13.1** It is the intention of the undersigned and the holder to comply with the laws of the State of Oregon; accordingly, it is agreed that notwithstanding any provision to the contrary in this Note, no such provision shall require the payment or permit the collection of interest in excess of the maximum permitted by law. If any excess of interest in such respect is provided for, or shall be adjudicated to be so provided for, in this Note, then in such event (a) the provisions of this section shall govern and control; (b) neither the undersigned nor the undersigned's successors or assigns or any other party liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum amount permitted by law; (c) any such excess which may have been collected shall be either applied as a credit against the then unpaid principal amount hereof or refunded to the undersigned; and (d) the effective rate of interest shall be automatically subject to reduction to the maximum lawful interest rate allowed under the usury laws of the State of Oregon.

## SECTION 14.       SEVERABILITY.

**14.1** If any provision of this Note is construed to be invalid, illegal, unenforceable or against public policy, the remaining provisions of this Note shall not be affected thereby and shall be enforceable without respect thereto.

## SECTION 15.       NEGOTIATION.

**15.1** This Note is freely transferable and assignable by the holder hereof. In the event this Note is negotiated, endorsed or assigned to any party, such party shall not be subject to (and the undersigned hereby expressly waives as against such party) any defenses, setoffs, counterclaims, or other objections to the payment of this Note.

EXECUTED the day and year first above written.


Maker:   LOVE BITES ACQUISITION PARTNERS, LLC

By: _____

████████████████████

**EXHIBIT B**

**Security Agreement**

**EXHIBIT 1 - Page 26 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

# SECURITY AGREEMENT

**PARTIES**:

       **Love Bites Acquisition Partners, LLC**           "Debtor"

       **Love Bites by Carnie, Inc.**                 "Secured Party"

  **DATE:** _____

1. **Grant of Security Interest**:  For valuable consideration, the current receipt and reasonable equivalence of which is hereby acknowledged, Debtor hereby grants to Love Bites by Carnie, Inc., Secured Party, a security interest in the following described property together with all accessories, substitutions, additions, replacements, parts and accessions now or hereafter affixed to or used in connection therewith, as well as the products and proceeds thereof, all hereinafter called "the collateral":

> All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, copyrights and general intangibles (including but not limited to all software intangibles, all payment intangibles, all trademarks, trademark registrations, and other intellectual property, and all contract rights); all fixtures; all attachments, accessions, accessories, fitting, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory, and software to utilize, create, maintain, and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

to secure payment of Debtor's debt to Secured Party as evidenced by Debtor's Secured Promissory Note payable to Secured Party in the amount of $970,000.00 (the "Note") pursuant to the terms and conditions set forth in the Note, and any additional amounts due under this Security Agreement.  This security interest is also granted with respect to all after acquired property similar in nature to the property just described, in accordance with ORS 79.0204.  Debtor agrees to pay the amounts due under the Note and if any

portion thereof, principal or interest, is not paid when due and such default continues for more than 10 days, Debtor agrees to pay, in addition to the foregoing, Secured Party's reasonable costs of collection including reasonable attorney fees incurred at both the trial and appellate levels, including attorney's fees incurred in any bankruptcy proceeding of Debtor.

2. **Collateral**.  The collateral is primarily for business or commercial purposes.

3. **Location of the Collateral**.  The collateral is located and will remain at:

> 15028 SW Century Dr., #200
> Sherwood, OR 97140

4. **Debtor Warranties and Covenants.**

   4.1. Financing statements filed by other secured creditors covering the collateral or the products or proceeds thereof, are on file with the Oregon Secretary of State. Other than these liens, Debtor is the owner of the collateral free from any prior lien, security interest, or encumbrance and will defend the collateral against the claims and demands of all persons whomsoever.

   4.2. Debtor will pay, when due, all taxes, license fees and assessments relative to the collateral and its use and relative to the obligations secured hereby.  Should Debtor fail in the performance of any of the foregoing, Secured Party may pay any security interest having priority hereto, may order and pay for the repair, maintenance and preservation of the collateral, or any part thereof, may place and pay for any such insurance and may pay any such taxes.  Debtor agrees to pay Secured Party on demand all of the latter's disbursements for any of these purposes with interest at 4.25% per annum on all sums so paid from the date of payment until repaid.  Repayment of all such sums shall be secured by this Security Agreement.

   4.3. Debtor agrees to notify Secured Party immediately in writing of any change in Debtor's business address and of the location where the collateral is kept.

   4.4. In the event of any assignment by Secured party of this Security Agreement or of Secured Party's rights hereunder, Debtor will not assert as a defense, counterclaim, set-off or otherwise against Secured party' assignee any claim, known or unknown, which Debtor now has or claims to have or hereafter acquires against Secured Party.  However, notwithstanding any such assignment, Secured Party shall be liable to Debtor as if such assignment had not been made.

   4.5. At Debtor's expense, Debtor will join with Secured Party in executing, filing and doing whatever may be necessary under applicable law to perfect and continue Secured Party's security interest in the collateral.

4.6. Debtor consents to any extension of time of payment and to any substitution, exchange or release of the collateral and to the addition to or release of any party or person primarily or secondarily liable for the obligations, or part thereof.

5. **Default**.  Time is of the essence hereof.  Debtor shall be in default under this Security Agreement upon the occurrence of any of the following events or conditions:

   5.1. Debtor's failure to pay, when due, the principal of or interest on the Note.

   5.2. Debtor's failure to keep, observe or perform any provision of this Security Agreement or any other agreement between Debtor and Secured Party.

   5.3. The discovery of any misrepresentation, or material falsity of any warranty, representation or statement made or furnished by Debtor to Secured Party whether or not in connection with this Security Agreement.

   5.4. The loss, theft or destruction of or substantial damage to any of the collateral.

   5.5. Secured Party deems or has reasonable cause to deem Secured party' position insecure.

   5.6. The commencement of any insolvency or receivership proceedings by or against Debtor, or if Debtor, or any guarantor or co-signer or of the Note dies, and if Debtor or any guarantor or co-signer of the Note is a partnership, the death of any partner.

6. **Attorney's Fees**.  Upon Debtor's default, Secured Party shall have each and all of the rights and remedies granted to Secured Party by the Uniform Commercial Code of Oregon, by the Note and by this Security Agreement, and may declare the obligations immediately due and payable and may require Debtor to assemble the collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to all parties.  Debtor agrees to pay Secured Party's reasonable attorney fees and other expenses incurred by the latter in retaking, holding, preparing for sale, selling and realizing on the collateral (converting the collateral into money).  Should suit or action be instituted on this Security Agreement, or the Note including, but not limited to, any replevin action, reasonable attorney fees, costs and disbursements may be awarded to the prevailing party in both trial and appellate courts.

7. **General Provisions of the Security Agreement**.

   7.1. The Note which this Security Agreement secures is a separate instrument and may be negotiated, extended or renewed by Secured Party without release of Debtor, the collateral or any guarantor or co-signer.

   7.2. **Jurisdiction and Venue**.  This Security Agreement shall be construed and

enforced in accordance with laws of the state of Oregon, with venue in Washington County.

7.3. **Binding Effect**. This Security Agreement shall be binding upon and inure to the benefit of the parties hereto, their heirs, personal representatives, legal representatives, successors and assigns. As used herein, the term "successor" shall include any person, firm, corporation, limited liability company or other business entity which at any time, whether by merger, purchase or otherwise, acquires all or substantially all of the assets or business of the corporation

7.4. **Waivers**. Secured Party shall not be deemed to have waived any rights under this or any other agreement executed by Debtor unless the waiver is in writing signed by Secured Party. No delay in exercising Secured Party's rights shall be a waiver nor shall a waiver on one occasion operate as a waiver of such right on a future occasion.

7.5. **Integration and Modification**. This Security Agreement contains the entire understanding of the parties hereto and supersedes all prior negotiations either written or oral. This Security Agreement may not be modified except by subsequent agreement in writing signed by the party to be charged.

7.6. **Written Notices**. Written notice(s) shall be given and deemed effective as provided in the Note. When reasonable notice is required, five days from the effective date of notice will be deemed reasonable.

7.7. **Construction**. In construing this Security Agreement, it is understood that the parties may be individuals, corporations, limited liability companies and if the context so requires, a singular pronoun shall be taken to mean and include the plural, the masculine, the feminine and the neuter, and all grammatical changes shall be made to make the terms hereof apply equally to individuals or corporations. The paragraph headings are for convenience and shall not in any way limit or be deemed to construe or be part of the terms and provisions of this agreement.

7.8 **Counterparts**. This Security Agreement may be signed in counterparts. Faxed and e-mailed signatures shall be valid as originals.

IN WITNESS WHEREOF, the undersigned has signed this Security Agreement on the date set forth above.

DEBTOR: LOVE BITES ACQUISITION PARTNERS LLC


By: _____ ____


| Description | Location | Book Value |
|---|---|---|
| Nuova Espresso Machine Double w/Grinder | Café | $ 970.49 |
| BEVUCR34Y-Under Counter Ref | Café | $ 400.15 |
| 2 count, MDX-Coffee Grinder | Café | $ 582.98 |
| HWD-2102, Hot Water Dispenser | Café | $ 424.04 |
| CB2132XTS - Coffee Brewer | Café | $ 527.54 |
| BB72Y1S - Back Bar Cooler SS 72" | Café | $ 1,976.54 |
| UFC67A - reach in undercounter freezer | Café | $ 2,435.92 |
| BUNN 22100 Bulk Commercial coffee grinder | Café | $ 554.99 |
| Drop in Delice +Freight | Café | $ 9,170.59 |
| 2 count - GR-1.2 | Production | $ 1,052.42 |
| 2 count, VOL59500P - Mirage Pro Induction Range | Production | $ 687.55 |
| 1 count, V42 Roll in oven.  1 count V-DSS-15 Oven Rack Double.  Install + Freight | Production | $ 28,247.82 |
| | **Subtotal** | **$ 47,031.03** |

| | | |
|---|---|---|
| AMARCS10TS, Microwave, 1000 Watt 5 PWR  replaces ALD10T | Café | $ 342.69 |
| 2 count, JobJNS11-Maple Top Table | Production | $ 380.29 |
| 60 QT Mixer | Production | $ 3,589.17 |
| VCM Hobart | Production | $ 3,589.17 |
| 20 QT Mixer | Production | $ 1,946.67 |
| 2 count, VOL74110140-Mirage Induction Rethermalizer | Production | $ 555.85 |
| SPE60-12M, 60" Prep Table | Production | $ 1,846.08 |
| 3 count, VOL59500P-Mirage Pro | Production | $ 894.74 |
| 2 count, Baker Tables | Production | $ 1,088.92 |
| 2 count, GSWHS1615F-Handsink with foot pedals | Production | $ 501.53 |
| FMSEC24483GN-Security Encloser | Production | $ 413.40 |
| B-7133-03-Hose Real | Production | $ 676.07 |
| SSP BCDTL-96-L Budget L Shape clean Dishtable + Freight | Production | $ 702.08 |
| 1 count, 6900-208-FF - PaniniPro Sandwich press. | Production | $ 4,582.58 |
| 1 count Dish Hood.  Dish exhaust fan, and freight. | Production | $ 3,958.15 |
| | Subtotal | **$ 25,067.37** |

| | | |
|---|---|---|
| hinds Bock Depositor | Production | $ 15,114.40 |
| Pacific Air Compressors & Air Dryer with timer Drain | Production | $ 5,312.80 |
| | **Subtotal** | **$ 20,427.20** |

| | | |
|---|---|---|
| Walk in Box # 2, install and refridgeration | Production | $ 120,778.02 |
| | **Subtotal** | **$ 120,778.02** |

**EXHIBIT 1 - Page  31 of 43**
A/B - Question 50
Case 21-32073-dwh11    Doc 118    Filed 04/01/22

| Description | Location | Book Value |
|---|---|---|
| Total racking delivered and installed | Production | $ 2,697.96 |
| Forklift-used | Production | $ 10,280.83 |
| | **Subtotal** | **$ 12,978.79** |

| Description | Location | Book Value |
|---|---|---|
| Rack for Freezer | Café | $ 333.67 |
| used tray racks | Production | $ 359.38 |
| 4 chest freezers | Production | $ 379.20 |
| Jet Stamp graphic 970 handheld packaging printer | Production | $ 1,472.40 |
| 9 count, CREWT3096-Work Table 30 x 96 | Production | $ 1,182.93 |
| 250 count - Baking Mold. | Production | $ 2,877.88 |
| manual pallet jack | Production | $ 232.38 |
| manual pallet jack | Production | $ 232.38 |
| 2 count, KITKSM8990WH - Mixer 8 Qt | Production | $ 777.45 |
| Item 25300, Chicago Metalic Mold | Production | $ 2,414.87 |
| BDDT-72-L, Dirty Dish Table | Production | $ 723.66 |
| BCDTL-60R, L Shap Clean Dish, C18640A-GRE, Drip Through | Production | $ 1,123.69 |
| 2 14x28x16 s/s dolley cart | Production | $ 487.50 |
| Conv. rolling stand w/tray rack | Production | $ 531.25 |
| shelving for warehouse | Production | $ 1,661.87 |
| Eagle T100 Carton Sealing Machine | Production | $ 3,082.97 |
| 107 1/2" Reversible Countertop Dough Sheeter | Production | $ 2,962.61 |
| Cutting Die for cheesecake tray | Production | $ 4,200.00 |
| 7-Piston Depositor | Production | $ 31,881.48 |
| Sneed Jet Printer | Production | $ 2,764.50 |
| Pressure Feed Hopper | Production | $ 3,408.13 |
| | **Subtotal** | **$ 63,090.18** |

| Description | | Book Value |
|---|---|---|
| Build Out | | $ 338,136.95 |
| | **Subtotal** | **$ 338,136.95** |

| | | |
|---|---|---|
| **Grand Total** | | **$627,509.54** |

**EXHIBIT 1 - Page  32 of 43**
Page 2 of 2
A/B - Question 50
Case 21-32073-dwh11   Doc 118   Filed 04/01/22

**SCHEDULE 2.1(c)(i)**

**Contracts/Leases**

| Contract/Lease Counterparty | Contract/Lease Description | Cure Amount |
|---|---|---|
| ORWA Sherwood, LLC | Facility Lease for property located at 15028 SW Century Drive, Suite 200, Sherwood, OR 97140 | 312,884.00 |

**EXHIBIT 1 - Page  33 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

**SCHEDULE 2.1(c)(ii)**

**Purchase Orders**

| Customer | Purchase Order Nos. | Face Value |
|----------|---------------------|------------|
| N/A      |                     |            |
|          |                     |            |
|          |                     |            |
|          |                     |            |
|          |                     |            |

**EXHIBIT 1 - Page  34 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

**SCHEDULE 2.2(c)**

**Seller's Bank Accounts and Lockbox Arrangements**

| Depository Institution | Account Type/Last 4 | Approximate Balance |
|---|---|---|
| N/A | | |
| | | |

**EXHIBIT 1 - Page  35 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

**SCHEDULE 2.2(p)**

**Specific Excluded Assets**

All collateral of Quality Leasing Co., Inc., including, but not limited to, 2019 Weighpack Flow Wrapper, Markem Image Smartdata X40 Printer, Spare Parts Kit

**EXHIBIT 1 - Page  36 of 43**

Case 21-32073-dwh11     Doc 118     Filed 04/01/22

LOVE BITES BY CARNIE, INC.
SCHEDULE 2.5(c)

| 2022 | Interest | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| **Sales/Note Payment [1]** | | $ 625,000.00 | $ 24,746.04 | $ 8,036.61 | $ 8,036.61 | $ 24,746.04 | $ 8,036.61 | $ 8,036.61 | $ 26,877.04 | $ 733,515.56 |
| | | | | | | | | | | |
| **Admin/Professional [2]** | | $ 110,000.00 | | | | | | | $ 1,400.00 | $ 111,400.00 |
| **Other Priority [3]** | | $ 1,000.00 | | | | | | | | $ 1,000.00 |

| Classes | Name | Claim Amt | Interest | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 1 | Beneficial State Bank [4] | $ 583,018.12 | $ 6,389.24 | $ 140,546.83 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 196,803.10 |
| Class 2 | U.S. SBA [5] | $ 157,875.00 | | $ - | | | | | | $ 731.00 | | $ 731.00 |
| Class 3 | Mintaka Financial, LLC | $ 48,269.82 | $ 5,236.94 | $ 53,506.76 | | | | | | | | $ 53,506.76 |
| Class 4 | Blue Bridge Financial, LLC | $ 32,421.00 | $ 2,341.06 | $ 34,762.06 | | | | | | | | $ 34,762.06 |
| Class 5 | Amur Equipment Finance | $ 31,683.56 | $ 3,437.45 | $ 35,121.01 | | | | | | | | $ 35,121.01 |
| Class 15 | Quality Leasing Co. | $ 68,393.75 | SURRENDER | | | | | | | | | |
| Class 6 | EBF Partners, LLC | $ 49,526.30 | $ - | $ 49,526.30 | | | | | | | | $ 49,526.30 |
| Class 7 | Washington County Tax | $ 7,241.47 | $ 698.36 | $ 7,939.83 | | | | | | | | $ 7,939.83 |
| Class 8 | Integrity Staffing [6] | $ 91,666.67 | ($16,666.66) | $ 75,000.01 | | | | | | | | $ 75,000.01 |
| Class 9 | U/S with Pers. Guantee [7] | $ 470,311.13 | | $ 17,597.20 | $ 16,709.43 | | | $ 16,709.43 | | | $ 16,709.43 | $ 67,725.49 |
| Class 10 | U/S without Pers. Guantee [8] | $ 621,399.95 | | $ 100,000.00 | | | | | | | | $ 100,000.00 |
| Class 11 | U/S Subordinated | $ 2,598,345.13 | | | | | | | | | | $ - |
| Class 12 | U/S Forgiveable | $ 203,361.00 | | | | | | | | | | $ - |
| | | | | | | | | | | | | $ - |
| Total | | | $ 1,436.39 | $ 625,000.00 | $ 24,746.04 | $ 8,036.61 | $ 8,036.61 | $ 24,746.04 | $ 8,036.61 | $ 8,036.61 | $ 26,877.04 | $ 733,515.56 |

[1] Assumes sale of substantially all of the Debtor's assets with purchase price paid $625,000 at time of sale and remainder paid according to terms of a note.
[2] Estimated based on attorney's fees of $100,000 and Subchapter V trustee fees of $10,000.
[3] Assumes all other priority claims paid from cash on hand; estimated other potential administrative claims of $1,000 to the extent cash on hand is insufficient.
[4] Assumes consensual plan with creditor to allow distributions to other creditors from initial $625,000 payment and make additional monthly payments. Payments continue through November 2026.
[5] Assumes commencement of payments on contractual 30 year term after 30 month deferral from note date.
[6] Assumes two post-petition payments of $8,333.33 each made by guarantor and payment of remaining balance on unsubordinated claim at closing.
[7] Assumes payment in full on claims in this class without interest.
[8] Assumes one time payment to claims in this class of approximately 10%.

3/29/2022

**EXHIBIT 1 - Page 37 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

LOVE BITES BY CARNIE, INC.
SCHEDULE 2.5(c)

| 2023 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales/Note Payment | $ 8,767.61 | $ 8,767.61 | $ 25,477.04 | $ 8,767.61 | $ 8,767.61 | $ 35,477.04 | $ 8,767.61 | $ 8,767.61 | $ 41,977.04 | $ 8,767.61 | $ 8,767.61 | $ 27,127.04 | $ 200,199.00 |
| | | | | | | | | | | | | | |
| Admin/Professional | | | | | | | | | | | | 1,650.00 | $ 1,650.00 |
| Other Priority | | | | | | | | | | | | | $ - |

| Classes | Name | Claim Amt | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 1 | Beneficial State Bank | $ 292,604.26 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 18,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | $ 106,439.32 |
| Class 2 | U.S. SBA | $ 157,144.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | | $ 8,772.00 |
| Class 3 | Mintaka Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 4 | Blue Bridge Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 5 | Amur Equipment Finance | $ - | | | | | | | | | | | | | $ - |
| Class 13 | Quality Leasing Co. | $ - | | | | | | | | | | | | | $ - |
| Class 6 | EBF Partners, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 7 | Washington County Tax | $ - | | | | | | | | | | | | | $ - |
| Class 8 | Integrity Staffing | $ - | | | | | | | | | | | | | $ - |
| Class 9 | U/S with Pers. Guantee | $ 402,585.64 | | | 16,709.43 | | | 16,709.43 | | | 33,209.43 | | | 16,709.43 | $ 83,337.72 |
| Class 10 | U/S without Pers. Guantee | $ 521,399.95 | | | | | | | | | | | | | $ - |
| Class 11 | U/S Subordinated | $ 2,598,345.13 | | | | | | | | | | | | | $ - |
| Class 12 | U/S Forgiveable | $ 203,361.00 | | | | | | | | | | | | | $ - |
| | | | | | | | | | | | | | | | |
| Total | | | $ 8,767.61 | 8,767.61 | 25,477.04 | 8,767.61 | 8,767.61 | 35,477.04 | 8,767.61 | 8,767.61 | 41,977.04 | 8,767.61 | 8,767.61 | 27,127.04 | $ 198,549.04 |

3/29/2022

**EXHIBIT 1 - Page  38 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

LOVE BITES BY CARNIE, INC.
SCHEDULE 2.5(c)

| 2024 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales/Note Payment | $ 8,767.61 | $ 8,767.61 | $ 25,477.04 | $ 8,767.61 | $ 8,767.61 | $ 35,477.04 | $ 8,767.61 | $ 8,767.61 | $ 41,977.04 | $ 8,767.61 | $ 8,767.61 | $ 35,460.38 | $ 208,532.38 |
| | | | | | | | | | | | | | |
| Admin/Professional | | | | | | | | | | | | $ 1,650.00 | $ 1,650.00 |
| Other Priority | | | | | | | | | | | | | $ - |

| Classes | Name | Claim Amt | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 1 | Beneficial State Bank | $ 294,203.55 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 18,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 8,036.61 | $ 106,439.32 |
| Class 2 | U.S. SBA | $ 149,103.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 731.00 | $ 8,772.00 |
| Class 3 | Mintaka Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 4 | Blue Bridge Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 5 | Amur Equipment Finance | $ - | | | | | | | | | | | | | $ - |
| Class 13 | Quality Leasing Co. | $ - | | | | | | | | | | | | | $ - |
| Class 6 | EBF Partners, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 7 | Washington County Tax | $ - | | | | | | | | | | | | | $ - |
| Class 8 | Integrity Staffing | $ - | | | | | | | | | | | | | $ - |
| Class 9 | U/S with Pers. Guarantee | $ 319,247.92 | | | $ 16,709.43 | | | $ 16,709.43 | | | $ 33,209.43 | | | $ 25,042.77 | $ 91,671.06 |
| Class 10 | U/S without Pers. Guarantee | $ 521,399.95 | | | | | | | | | | | | | $ - |
| Class 11 | U/S Subordinated | $ 2,598,345.13 | | | | | | | | | | | | | $ - |
| Class 12 | U/S Forgiveable | $ 203,361.00 | | | | | | | | | | | | | $ - |
| | | | | | | | | | | | | | | | |
| Total | | | $ 8,767.61 | $ 8,767.61 | $ 25,477.04 | $ 8,767.61 | $ 8,767.61 | $ 35,477.04 | $ 8,767.61 | $ 8,767.61 | $ 41,977.04 | $ 8,767.61 | $ 8,767.61 | $ 35,460.38 | $ 206,882.38 |

3/29/2022

**EXHIBIT 1 - Page  39 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

LOVE BITES BY CARNIE, INC.
SCHEDULE 2.5(c)

| 2025 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales/Note Payment | $ 8,767.61 | $ 8,767.61 | $ 33,810.38 | $ 8,767.61 | $ 8,767.61 | $ 43,810.38 | $ 8,767.61 | $ 8,767.61 | $ 50,310.38 | $ 8,767.61 | $ 8,767.61 | $ 35,460.38 | $ 233,532.40 |
| | | | | | | | | | | | | | |
| Admin/Professional | | | | | | | | | | | | $ 1,650.00 | $ 1,650.00 |
| Other Priority | | | | | | | | | | | | | $ - |

| Classes | Name | Claim Amt | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 1 | Beneficial State Bank | $ 195,798.84 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 18,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | $ 106,439.32 |
| Class 2 | U.S. SBA | $ 141,062.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | $ 8,772.00 |
| Class 3 | Mintaka Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 4 | Blue Bridge Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 5 | Amur Equipment Finance | $ - | | | | | | | | | | | | | $ - |
| Class 13 | Quality Leasing Co. | $ - | | | | | | | | | | | | | $ - |
| Class 6 | EBF Partners, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 7 | Washington County Tax | $ - | | | | | | | | | | | | | $ - |
| Class 8 | Integrity Staffing | $ - | | | | | | | | | | | | | $ - |
| Class 9 | U/S with Pers. Guantee | $ 227,576.86 | | | 25,042.77 | | | 25,042.77 | | | 41,542.77 | | | 25,042.77 | $ 116,671.08 |
| Class 10 | U/S without Pers. Guantee | $ 521,399.95 | | | | | | | | | | | | | $ - |
| Class 11 | U/S Subordinated | $ 2,598,345.13 | | | | | | | | | | | | | $ - |
| Class 12 | U/S Forgiveable | $ 203,361.00 | | | | | | | | | | | | | $ - |
| | | | | | | | | | | | | | | | $ - |
| Total | | | $ 8,767.61 | $ 8,767.61 | $ 33,810.38 | $ 8,767.61 | $ 8,767.61 | $ 43,810.38 | $ 8,767.61 | $ 8,767.61 | $ 50,310.38 | $ 8,767.61 | $ 8,767.61 | $ 35,460.38 | $ 231,882.40 |

3/29/2022

**EXHIBIT 1 - Page  40 of 43**

Case 21-32073-dwh11     Doc 118     Filed 04/01/22

LOVE BITES BY CARNIE, INC.
SCHEDULE 2.5(c)

| 2026 | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales/Note Payment | $ 8,767.61 | $ 8,767.61 | $ 33,810.38 | $ 8,767.61 | $ 8,767.61 | $ 43,810.38 | $ 8,767.61 | $ 8,767.61 | $ 44,545.08 | $ 731.00 | $ 731.00 | $ 27,420.48 | $ 203,653.98 |
| | | | | | | | | | | | | | |
| Admin/Professional | | | | | | | | | | | | $ 1,646.71 | $ 1,646.71 |
| Other Priority | | | | | | | | | | | | | $ - |

| Classes | Name | Claim Amt | January | February | March | April | May | June | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Class 1 | Beneficial State Bank | $ 97,396.13 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 18,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 8,036.61 | 7,030.03 | | 97,396.13 |
| Class 2 | U.S. SBA | $ 133,021.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 731.00 | 8,772.00 |
| Class 3 | Mintaka Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 4 | Blue Bridge Financial, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 5 | Amur Equipment Finance | $ - | | | | | | | | | | | | | $ - |
| Class 13 | Quality Leasing Co. | $ - | | | | | | | | | | | | | $ - |
| Class 6 | EBF Partners, LLC | $ - | | | | | | | | | | | | | $ - |
| Class 7 | Washington County Tax | $ - | | | | | | | | | | | | | $ - |
| Class 8 | Integrity Staffing | $ - | | | | | | | | | | | | | $ - |
| Class 9 | U/S with Pers. Guantee | $ 110,905.78 | | | 25,042.77 | | | 25,042.77 | | | 35,777.47 | | | 25,042.77 | $ 110,905.78 |
| Class 10 | U/S without Pers. Guantee | $ 521,399.95 | | | | | | | | | | | | | $ - |
| Class 11 | U/S Subordinated | $ 2,598,145.13 | | | | | | | | | | | | | $ - |
| Class 12 | U/S Forgiveable | $ 203,361.00 | | | | | | | | | | | | | $ - |
| Total | | | $ 8,767.61 | $ 8,767.61 | $ 33,810.38 | $ 8,767.61 | $ 8,767.61 | $ 43,810.38 | $ 8,767.61 | $ 8,767.61 | $ 44,545.08 | $ 8,767.61 | $ 7,761.03 | $ 27,420.48 | $ 217,073.91 |

3/29/2022

**EXHIBIT 1 - Page 41 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

**SCHEDULE 4.3**

None.

EXHIBIT 1 - Page  42 of 43

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

**SCHEDULE 4.4**

None.

**EXHIBIT 1 - Page 43 of 43**

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Love Bites By Carnie, Inc.<br><br>             Debtor-in-Possession. | Case No.  21-32073-dwh11<br>**[PROPOSED]**<br>ORDER AUTHORIZING SALE OF REAL<br>AND PERSONAL PROPERTY FREE<br>AND CLEAR OF LIENS,<br>COMPENSATION OF REAL ESTATE<br>BROKER |

THIS MATTER having come before the Court on Debtor-in-Possession Love Bites By

Carnie, Inc.'s ("Debtor") Notice of Intent to Sell Real or Personal Property, Compensate

Real Estate Broker, and/or Pay Any Secured Creditor's Fee and Costs; Motion for Authority

to Sell Property Free and Clear of Liens; and Notice of Hearing (Doc No. _____) (the "Sale

Motion"); notice of the Sale Motion having been given pursuant to Bankruptcy Rule 2002(a)

and LBR 2002-1; the Court having heard and considered arguments of counsel and all

relevant pleadings, exhibits, and documents of record in this case, and the presentations of

counsel; so, therefore,

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY
FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE
BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 2 - Page  1 of 8**

**THE COURT FINDS:**

A. The Debtor provided proper, timely, adequate, and sufficient notice of the Sale Motion, the hearing on the Sale Motion, the transaction(s) contemplated under the Sale Motion in accordance Sections 363, 365 and Rules 2002, 6004, 6006, and 9014 to (i) the Office of the United States Trustee; (ii) the Subchapter V Trustee; (iii) all entities known to have asserted any interests in or upon the assets described in the Motion; (iv) all federal state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Sale Motion, and (v) the official service list in this case. Such notice was good and sufficient, and afford parties sent notice a reasonable opportunity to object or be heard with respect to the matters that the subject of this Order, and no other or further notice is required.

B. The purchaser of the Property (defined as that property described in the Sale Motion at ¶ 3) is Love Bites Acquisition Partners, LLC (the "Purchaser").

C. Debtor, in ascertaining whether the proposed purchase price constituted the "highest and/or best offer" for the Property, determined, in its best business judgment, that the proposed gross sale price offered by the Purchaser represents the highest and best offer for the Property. No other person, entity, or group of entities has offered to purchase the Property for greater economic or other value to Debtor. The Debtor asserts that it marketed its assets and conducted the sale process in full compliance with the Sale Motion and applicable law and rules.

D. The Court has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M),

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 2 - Page 2 of 8**

(N) and (O). Venue of this case and the Sale Motion in this District is proper under 28

U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought in the Sale

Motion are 11 U.S.C. §§ 363 and 365, and Fed. R. Bankr. P. 2002, 6004, 6006, and

9014.

E.  Approval of the transaction described by the Sale Motion at this time is in the best

interests of the Debtor, its creditors, its estate, and other parties in interest.

F.  The Debtor has demonstrated both (i) good, sufficient, and sound business purpose

and justification, and (ii) compelling circumstances for the sale pursuant to 11 U.S.C.

§ 363(b) in connection with its plan of reorganization. The Debtor diligently and in

good faith marketed the Property to secure the highest and best offer therefore.

G.  Debtor asserts that the Sale Motion was entered into by the Debtor and Purchaser

without collusion or fraud, in good faith, and from arm's-length bargaining positions.

H.  The transfer of the Property to Purchaser will be a legal, valid, and effective transfer

of the Property, will vest Purchaser with all right, title, and interest of the Debtor to the

Property free and clear of all interests in such property of a person or entity other

than the Debtor of (i) all liens of any kind or nature whatsoever arising under or out

of, or in connection with, or in any way relating to the operation of the Debtor's

business prior to the closing, or any acts of the Debtor, and (ii) all claims as defined

in 11 U.S.C. § 101(5) (collectively, "Interests").

**NOW, THEREFORE, it is ORDERED as follows:**

1.  The Sale Motion is granted in its entirety, as further described herein and pursuant to

the terms and conditions of this Order.

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY         VANDEN BOS & CHAPMAN, LLP
                                FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE                        Attorneys at Law
                                BROKER                                                                  319 SW Washington Street, Suite 520
                                                                                                           Portland, Oregon 97204-2690
**EXHIBIT 2 - Page  3 of 8**                                                                                    (503) 241-4869

2. The Asset Purchase Agreement ("APA") and all of the terms and conditions thereof are hereby approved in all respects. The failure specifically to include any particular provision of the Sale Motion or the APA in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Motion and/or the APA be authorized and approved in its entirety. Pursuant to 11 U.S.C. §§ 363 and 365, the Debtor is authorized and directed to consummate the sale, pursuant to and in accordance with the terms and conditions of the Sale Motion, the APA, and this Order (collectively, the "Sale Agreement").

3. The Debtor is authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Sale Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Agreement, and to take all further actions as may be reasonably requested by Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to Purchaser or reducing to its possession, the Property, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Sale Agreement.

4. As of the closing, the Debtor and each of the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release the Debtor's or such creditor's Interests in the Property, if any, as such Interests may have been recorded or may otherwise exist.

5. Pursuant to 11 U.S.C. § 363(f), the Property shall be transferred at closing to Purchaser, or its assigns, free and clear of all claims or Interests with all such claims or Interests to attach to the net proceeds of the Sale in the order of their priority, with

Page 4 of 8        ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY
                   FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE
                   BROKER

**EXHIBIT 2 - Page  4 of 8**

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Case 21-32073-dwh11    Doc 118    Filed 04/01/22

the same validity, force and effect which they now have as against the Property, and subject to any claims and defenses the Debtor may possess with respect thereto.

6. The proceeds from sale shall be paid to the Trustee and distributed in accordance with any confirmed Plan of Reorganization.

7. Pursuant to Bankruptcy Rule 6004(h), this Order is immediately effective upon entry and is not stayed, and the closing on the sale of the Property is authorized to take place immediately upon entry of this Order.

8. Except as expressly permitted, contractually assumed, or otherwise specifically provided by the Sale Agreement, all persons and entities holding claims and/or Interests against or in the Debtor or the Property, including but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, landlords, trade, unsecured creditors, and other creditors (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) in any way relating to the Debtor, the Property, the operation of the business of the Debtor prior to the closing, or the transfer of the Property to Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Interests against or in the Debtor or the Property against Purchaser, its successors or assigns, its property or interests or the Property.

9. All persons that are presently, or on the closing date may be, in possession of some or all of the Property are directed to surrender possession of the Property to Purchaser or as otherwise directed by Purchaser, with the claims or Interests of such person to be satisfied solely from the proceeds of the sale.

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 2 - Page 5 of 8**
Case 21-32073-dwh11    Doc 118    Filed 04/01/22

10. Purchaser shall not be liable or responsible for any liability or other obligation of the Debtor arising under or related to the Property, except as expressly provided for in the Sale Agreement. Without limiting the generality of the foregoing, and except as otherwise specifically provided in the Sale Agreement, Purchaser shall not be liable for any claims or Interests against the Debtor of any of its predecessors or affiliates, or as the transferee of the Property, and Purchaser shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the closing, now existing or hereafter arising or accruing, whether fixed or contingent, with respect to the Debtor of any obligations of the Debtor or any claims or Interests against the Debtor arising prior to the closing, including, without limitation, liabilities resulting from or relating to (i) errors or omissions claims, (ii) taxes, in either case, arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtor's business or the sale of the Property, or (iii) claims related to injunctive relief or for the posting of a bond or other security.

11. Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Sale Agreement.

12. The consideration provided by Purchaser is fair and reasonable and may not be avoided under section 363(n) or any other provision of the Bankruptcy Code, or any other applicable law or otherwise.

13. This Court retains jurisdiction to enforce and implement the terms and provisions of this Order and the Sale Agreement, and of each of the agreements executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 2 - Page 6 of 8**

to (a) compel delivery of the Property to the Purchaser, (b) resolve any disputes arising under or related to the Sale Agreement, except as otherwise provided therein, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect Purchaser against (i) any of the liabilities not expressly assumed and assigned, or (ii) any Interests in the Debtor or the Property, of any kind or nature whatsoever, attaching to the proceeds of the sale.

14. The terms and provisions of the Sale Agreement shall be binding in all respects upon, and shall inure to the benefit of, the Debtor, its estate, and its creditors, Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Property to be sold to Purchaser pursuant to the Sale Agreement, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding. In no circumstance shall the Sale Agreement be subject to rejection or avoidance.

15. Neither the Debtor nor Purchaser is required to make any filing with or give any notice to, or to obtain any approval, consent, ratification, permission, waiver or authorization from, any person or any governmental authority in connection with the execution and delivery of the Sale Agreement of the consummation of the transactions contemplated therein (other than with respect to governmental licenses which do not constitute Property), and the Debtor does not need to seek or obtain shareholder consent to consummate the transactions contemplated by the Sale Agreement.

###

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 2 - Page  7 of 8**

**PRESENTED BY**:

VANDEN BOS & CHAPMAN, LLP


By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor-in-Possession

**LBR 9021-1 CERTIFICATION**
I certify that I have complied with the
requirement of LBR 9021-1(a); Order
circulated as Proposed Order to Motion.

By:/s/Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor-in-Possession

**First Class Mail:**

Love Bites By Carnie, Inc.
c/o Tiffany Miller
15028 SW Century Dr. #200
Sherwood, OR  97140

**Electronic Mail:**

The foregoing was served on all CM/ECF
participants through the Court's Case
Management/Electronic Case File system.

ORDER AUTHORIZING SALE OF REAL AND PERSONAL PROPERTY
FREE AND CLEAR OF LIENS, COMPENSATION OF REAL ESTATE
BROKER

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

**EXHIBIT 2 - Page  8 of 8**

Label Matrix for local noticing
0979-3
Case 21-32073-dwh11
District of Oregon
Portland
Fri Apr  1 07:54:53 PDT 2022

AMUR Equipment Finance
c/o Delta Management Group, Inc
2499 Rice Ste Ste 245
Saint Paul, MN 55113-3700

Abernathy, Amanda
17860 SW 114th Ave
Tualatin, OR 97062-7211

Abernathy, Travis
17860 SW 114th Ave
Tualatin, OR 97062-7211

American Express
Attn: Kelsey Turner
POB 650448
Dallas, TX 75265-0448

American Express
c/o C T Corporation System, R. A.
780 Commercial St SE Ste 100
Salem, OR 97301-3465

American Express National Bank, AENB
c/o Zwicker and Associates, P.C.
Attorneys/Agents for Creditor
P.O. Box 9043
Andover, MA 01810-0943

Amur Equipment Finanace
Seth W. Yount, Corp. Counsel
PO Box 2555
304 W 3rd St
Grand Island, NE 68801-5941

Amur Equipment Finance
308 N Locust St #100
Grand Island, NE 68801-5985

Amur Equipment Finance
c/o Corporation Service Company
Reg. Agnt
1127 Broadway St NE #310
Salem, OR 97301-1139

BeginRight, Inc.
Attn: Joanne Bell
3708 NE 122nd Ave.
Portland, OR 97230-1357

BeginRight, Inc.
c/o Jeffrey S. Tarr, R. A.
Sussman Shank, LLP
1000 SW Broadway, Ste 400
Portland, OR 97205-3035

Beginright, Inc.
c/o William G. Fig, Esq
Sussman Shank LLP
1000 SW Broadway Ste 1400
Portland, OR 97205-3089

Beneficial State Bank
(fka Albina Community Bank)
Attn Michelle Lamb
430 SW 10th Ave.
Portland, OR 97209-3113

Beneficial State Bank
Erich Paetsch, Esq, Saalfeld Griggs PC
250 Church Street S
Park Place Suite 200
Salem, OR 97301-3921

Beneficial State Bank
c/o Kat Taylor, CEO
1438 Webster St #100
Oakland, CA 94612-3229

Beneficial State Bank
c/o Saalfeld Griggs PC
Attn: Erich M. Paetsch
PO Box 470
Salem, OR 97308-0470

BioLogic Resources, LLC
10260 SW Nimbus Ave, Ste M11
Portland, OR 97223-4356

Blue Bridge Financial LLC
c/o Paracorp Incorporated, R.A.
7288 Hanover Green Dr.
Mechanicsville, VA 23111-1709

Blue Bridge Financial, LLC
11911 Freedom Dr.
One Fountain Square #570
Reston, VA 20190

Blue Bridge Financial, LLC
Loss Mitigation Management
535 Washington St, Ste 201
Buffalo, NY 14203-1430

Bonnie & Don Flavours Inc.
Attn: Sara Aujla
919 Kamato Rd.
Mississauga, ON L4W 2R5
CANADA

Brittany E. Sullivan
10157 SW Barbur Blvd, Ste 208C
Portland, OR 97219-5943

CHRISTOPHER N COYLE
319 SW Washington St #520
Portland, OR 97204-2690

Carnie Wilson
15028 SW Century Dr. Ste 200
Sherwood, OR 97140-8327

Celtic Bank
POB 77081
Atlanta, GA 30357-1081

Celtic Bank
c/o Reese Howell, Jr. CEO
268 South State St, #300
Salt Lake City, UT 84111-5314

Comcast Business Communications
Systems, LLC
c/o CT Corporation System, RA
780 Commercial St
Salem, OR 97301

Comcast Business Services
9605 SW Nimbus Ave.
Beaverton, OR 97008-7198

Convergence Networks
4252 SE International Way, Ste A
Portland, OR 97222-8822

Convergence Networks
c/o ABSC Recovery
Attn: Nicole Vayo
3189 Princeton Rd. Ste 217
Hamilton, OH 45011-5338

Copiers Northwest Leasing a Program of
De Lage Landen Financial Services
P.O. Box 41602
Philadelphia, PA 19101-1602

Corrpac Packaging & Fulfillment
Attn: Scott Atkins
2501 21st Ave SW
Tumwater, WA 98512-5606

D & D Mechanical Inc.
Attn: Doris Dilgarde
POB 55395
Portland, OR 97238-5395

De Lage Landen Financial Services, Inc.
c/o Thomas K. Wolf, Esq
PO Box 6507
Bend, OR 97708-6507

Dial Temporary Help Service, Inc.
c/o James W. Hendry, Esq.
1 SW Columbia St., Ste. 900
Portland, OR 97204-4044

Dial Temporary Help Service, Inc.
c/o James W. Hendry, Reg. Agnt
1 SW Columbia St, Ste 900
Portland, OR 97204-4044

Dial Temporary Help Service, Inc.
dba Employers Overload
Attn: Tom Szambelan
POB 1928
Lake Oswego, OR 97035-0018

Diane Abernathy
18104 Pilkington Rd.
Lake Oswego, OR 97035-7046

EBF Partners, LLC
National Registered Agents, Inc.
Reg. Agnt
1209 Orange St
Wilmington, DE 19801-1120

(p)EVEREST BUSINESS FUNDING LLC
8200 NW 52ND TERR
SECOND FLOOR
DORAL FL 33166-7852

EBF Partners, LLC
dba Everest Business Funding
c/o Ariel Bouskila, Esq.
80 Broad St Suite 3303
New York, NY 10004-2209

EBF Partners, LLC dba Everest Business Fundi
c/o Maurice Wutsher LLP
23611 Chagrin Blvd. Suite 207
Beachwood, OH 44122-5540

Earth20
PO Box 70
Culver, OR 97734-0070

Kenneth S Eiler
515 NW Saltzman Rd - PMB 810
Portland, OR 97229-6098

Element Materials Technology Food
c/o The Corporation Trust Company, R.A.
1209 Orange St
Wilmington, DE 19801-1120

Element Materials Technology Food US LLC
3701 Port Union Road
Fairfield, OH 45014-2200

Element Materials Technology Food US LLC
Attn: Chris Voelpel
3701 Port Union Rd.
Fairfield, OH 45014-2200

Element Materials Technology Food US LLC
c/o The Corporation Trust Company, RA
1209 Orange St
Wilmington, DE 19801-1120

FFE Transportation Services, Inc.
Attn: Christina Chen
POB 655888
Dallas, TX 75265-5888

FFE Transportations Services, Inc.
The Corporation Trust Company, RA
1209 Orange St
Wilmington, DE 19801-1120

FedEx
POB 7221
Pasadena, CA 91109-7321

FedEx Corporate Services Inc
as Assignee of FedEx Express
Ground/Freight/Office
3965 Airways Blvd, Module G, 3rd Fl
Memphis, TN 38116-5017

Financial Pacific Leasing, Inc.
3455 S 344th Way
Auburn, WA 98001-9546

Financial Pacific Leasing, Inc.
c/o Gary Bergstrom, R.A.
3455 S 344th Way Ste 300
Auburn, WA 98001-9546

Foster Plumbing, Inc.
10100 SW Evergreen Ct.
Wilsonville, OR 97070-8554

GS1 US
7887 Washington Village Drive, Ste. 300
Dayton, OH 45459-3988

Garret Sign Company, Inc.
811 Harney Street
Vancouver, WA 98660-3042

Garret Sign Company, Inc.
c/o DWT Washington, LLC
Reg. Agnt
920 Fifth Ave, Ste 3300
Seattle, WA 98104-1610

Gish, Julie
16093 SW Baler Way
Sherwood, OR 97140-8786

NICHOLAS J HENDERSON
Motschenbacher & Blattner, LLP
117 SW Taylor Street
Ste 300
Portland, OR 97204-3029

JAMES W HENDRY
Brownstein Rask, LLP
1 SW Columbia St.
Ste. 900
Portland, OR 97204-4044

Heffernan Insurance Brokers
1350 Carlback Ave
Walnut Creek, CA 94596-7231

(p) INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

IRS
Attn: Civil Process Clerk
U.S. Attorney, District of Oregon
1000 SW 3rd, #600
Portland, OR 97204-2936

IRS
Centralized Insolvency Operation
P. O. Box 7346
Philadelphia, PA 19101-7346

IRS
PO Box 7346
Philadelphia PA 19101-7346

Industrial Source
Springfield Office
3500 Commericial Ave
Springfield, OR 97478-5625

Industrial Source National
Fire Fighter/LPM
PO Box 7577
Springfield, OR 97475-0022

Integrity Staffing, Inc.
c/o Robert E. Kellogg, P.C.
7945 SW Mohawk St.
Tualatin, OR 97062-9193

Integrity Staffing, Inc.
Attn: Jonathan Crane, R.A.
POB 1935
Tualatin, OR 97062-1935

Integrity Staffing, Inc.
Jonathan David Crane, R.A.
18725 SW Boones Ferry Rd
Tualatin, OR 97062-8487

Integrity Staffing, Inc.
c/o Robert E. Kellogg, Esq.
7945 SW Mohawk St
Tualatin, OR 97062-9193

JP Morgan Chase
c/o Jamie Dimon, Chairman & CEO
Reg. Agnt
111 Polaris Parkway
Columbus, OH 43240

(p) JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Jacobsen LLC
602 SE SALMON STREET
Portland, OR 97214-3443

Jacobsen Salt Co-AX
602 SE Salmon St.
Portland, OR 97214-3443

Jacquelyne Piesen Love & Mike Love
937 Tahoe Blvd., Ste. 200
Incline Village, NV 89451-7412

Joe Alexander
2427 251st St.
Lomita, CA 90717-2008

ROBERT E KELLOGG
Robert E. Kellogg, P.C.
7945 SW Mohawk Street
Tualatin, OR 97062-9193

Kabbage Funding
c/o National Check Resolution, Inc
PO Box 491406
Lawrenceville, GA 30049-0024

Kirschner, Kimberly
18100 SW Ewen Dr.
Beaverton, OR 97003-3848

Kiser, Amber
17715 SW Yaquina Ct
Tualatin, OR 97062-8448

Knight CS LLC
POB 5934
Beaverton, OR 97006-0934

Love Bites by Carnie, Inc.
15028 SW Century Dr., Ste 200
Sherwood, OR 97140-8327

SCOTT J MITCHELL
Monson Law Office P.C.
1865 NW 169th Place #208
Beaverton, OR 97006-7310

Marilyn Wilson-Rutherford
5427 Colodny Dr
Agoura Hills, CA 91301-2213

McFadden/Gavender Advertising, Inc.
Attn: Karen Gavender
2951 N Swan Rd., Ste. 185
Tucson, AZ 85712-1258

Metrofax
6922 Hollywood Blvd #500
Los Angeles, CA 90028-6125

Metrofax
abn J2 Cloud Services, Inc.
c/o COrporation Service Company, RA
250 Little Falls Dr.
Wilmington, DE 19808

Mintaka Financial LLC
fka BSB Leasing
c/o David Schaefer, R. A.
PO Box 2149
Gig Harbor, WA 98335-4149

Mintaka Financial, LLC
c/o James Laurick
Kilmer, Voorhees & Laurick
2701 NW Vaughn St Ste 780
Portland, OR 97210-5385

Mintaka Financial, LLC
c/o Orion First Financial, LLC
PO Box 2149
Gig Harbor, WA 98335-4149

NW Natural
PO Box 6017
Portland, OR 97228-6017

Newmeyer & Dillion LLP
895 Dove St., Fifth Floor
Newport Beach, CA 92660-2999

Northwest Natural
c/o Mardilyn Saathoff, Reg. Agnt
250 SW Taylor St
Portland, OR 97204-3034

ODR
ATTN: Bankruptcy Unit
955 Center St NE
Salem, OR 97301-2555

ODR
c/o Ellen Rosenblum, Attorney General
Oregon Department of Justice
1162 Court St, NE
Salem, OR 97301-4096

ODR Bkcy
955 Center St NE
Salem OR 97301-2555

ORWA Sherwood LLC
Attn: Brenda Christina
8320 NE Highway 99
Vancouver, WA 98665-8819

ORWA Sherwood, LLC
c/o Gary Blacklidge
Jordan Ramis PC
2 Centerpointe Dr 6th Fl
Lake Oswego, OR 97035-8618

Oregon Consumer & Business Svcs
Revenue & Accounting Services
PO Box 14610
Salem, OR 97309-0445

Oregon Employment Dept.
PO Box 4395 Unit 02
Portland, OR 97208-4395

Orkin
5013 Pacific Hwy E, Ste. 6
Fife, WA 98424-3430

ERICH M PAETSCH
POB 470
Salem, OR 97308-0470

PGE
PO Box 4438
Portland, OR 97208-4438

PGE
c/o Stephen A. Redshaw, Reg. Agnt
121 SW Salmon
Portland, OR 97204-2991

PORTLAND GENERAL ELECTRIC
7895 SW MOHAWK ST
TUALATIN OR 97062-9192

(p)PAWNEE LEASING CORPORATION ATTN  SANDI CAR
3801 AUTOMATION WAY
STE 207
FORT COLLINS CO 80525-5735

Pawnee Leasing Corporation
c/o Corporation Service Company
Reg. Agent
1127 Broadway St NE Ste 310
Salem, OR 97301-1139

Pawnee Leasing Corporation
c/o Harry L. Simon, Esq.
10200 E Girard Ave, Bldg B, #120
Denver, CO 80231-5500

Pawnee Leasing Corporation
c/o Irwin M. Wittlin, Esq.
Hemar Rousso & Heald, LLP
15910 Venture Blvd, 12th fl
Encino, CA 91436-2829

Portland BagelWorks
c/o Richard Bartel
25 NW 23rd Pl, Ste 6, PMB 126
Portland, OR 97210-5580

Pride Disposal Company
PO Box 820
Sherwood, OR 97140-0820

Pride Disposal Company
c/o Kristen Leichner, President
PO Box 820
Sherwood, OR 97140-0820

Pride, Morgan
15660 SW Oriole Ct.
Sherwood, OR 97140-9181

ProVista Specialty Foods
OB O'Brien
3305 NW Guam St.
Portland, OR 97210-1611

Product Vessel Inc,
826 Eagleson Link NW
Edmonton, AB T6M OV5
CANADA

QL Titling Trust LTD/Quality Leasing Co. Inc
c/o J. Ward Holliday & Assoc.
5930 Royal Lane, Suite 279
Dallas, Texas 75230-3849

QL Titling Trust LTD/Quality Leasing Co., In
9830 Bauer Drive
Indianapolis, IN 46280-1972

Quality Leasing Co., Inc.
9830 Bauer Drive
Indianapolis, IN 46280-1972

Quality Leasing Co., Inc.
c/o National Registered Agents, Inc.
Reg. Agent
8130 SW Beaverton-Hillsdale Hwy
Portland, OR 97225-1845

DOUGLAS R RICKS
319 SW Washington St #520
Portland, OR 97204-2620

Raffi Khatchadourian
Hemar, Rousso & Heald, LLP
15910 Ventura Boulevard, 12th Floor
Encino 91436-2829

Recovery Solutions Group, LLC
Anthony Vaquiz
1008 Mattlind Way
Milford, DE 19963-5300

(p)REVEL SYSTEMS  INC
ATTN GENERAL COUNSEL
600 PEACHTREE STREET NE
SUITE 3800
ATLANTA GA 30308-2218

(c)REVEL SYSTEMS, INC.
C/O TIMEPAYMENT CORPORATION
1600 DISTRICT AVE STE 200
BURLINGTON MA  01803-5233

Ria Distributing, Inc.
Ron Scott
7720 SW Nimbus Ave.
Beaverton, OR 97008-6400

Douglas R. Ricks
Vanden Bos & Chapman, LLP
319 SW Washington St
Suite 520
Portland, OR 97204-2620

Rigby, Gennifer
13440 SE 169th Ave. #B402
Happy Valley, OR 97015-8745

Rose's Equipment & Supply, Inc.
Lynsey Nelson
207 SE Clay St.
Portland, OR 97214-3307

Rose's Equipment & Supply, Inc.
c/o Tom Rose, Reg. Agnt
207 SE Clay St
Portland, OR 97214-3307

Rose's Equipment and Supply, Inc.
207 SE Clay
Portland, OR 97214-3307

SBS Foods, Inc
4616 S. Ben Franklin Lane
Spokane, WA 99224-5178

SBS Foods, Inc.
Juleen Latvala
POB 19399
Spokane, WA 99219-9399

SBS Foods, Inc.
c/o NACM Commercial Services
Attn: Jim Nichols
606 N Pines Rd, STe 102
Spokane, WA 99206-6711

SBS Foods, Inc.
c/o Parks Associates, PLLC R.A.
101 W Cataldo Ave Ste 200
Spokane, WA 99201-3200

SCS Global Services
2000 Powell Street, Ste. 600
Emeryville, CA 94608-1805

THOMAS W STILLEY
1000 SW BROADWAY #1400
PORTLAND, OR 97205-3066

Sherratt Reicher
15028 SW Century Dr., Ste 200
Sherwood, OR 97140-8327

Shopify Inc.
150 Elgin Street, 8th Floor
Ottawa, ON K2P 1L4
CANADA

Sneed Coding Solutions, Inc.
20008 Champion Forest Dr., Ste. 803
Spring, TX 77379-8696

State of Oregon
Employment Dept.
875 Union Street NE
Salem, OR 97311-0800

State of Oregon BOLI
800 NE Oregon St., Ste 1045
Portland, OR 97232-3601

Summit Staffing Solutions Inc.
Melissa Craig
9725 SW Commerce Circle A-4
Wilsonville, OR 97070-9601

Summit Staffing Solutions Inc.
c/o Troutman Law Firm PC
Ted Troutman, Esq.
5075 SW Griffith Dr. #220
Beaverton OR 97005-3045

Sysco Portland, Inc.
Kim Reagan
26250 SW Parkway Center Dr
Wilsonville, OR 97070-9606

Sysco Portland, Inc.
c/o Sullivan & Terranova
10157 SW Barbur Blvd Ste 208C
Portland, OR 97219-5943

CHRISTIAN A. TORIMINO
DOJ-Ust
1220 SW 3rd Ave.
Room 315
Portland, OR 97204-2829

TED A TROUTMAN
5075 SW Griffith Dr.
STE 220
Beaverton, OR 97005-3045

The Chef's Warehouse West Coast LLC
dba Chefs' Warehouse
c/o Davis Galm Law Firm
1220 SW First St
Beaverton, OR 97005

The Chefs' Warehouse West Coast LLC
c/o Corporation Service Company, R.A.
1127 Broadway St NE, Ste 310
Salem, OR 97301-1139

Tiffany Miller
15028 SW Century Dr., Ste 200
Sherwood, OR 97140-8327

Tiffany Miller
18104 Pilkington Rd
Lake Oswego, OR 97035-7046

Timepayment Corporation
c/o Corporation Service Company
Reg. Agnt
1127 Broadway St, NE Ste 310
Salem, OR 97301-1139

Tri-County Industrial Parks #6 LLC
8320 NE Hwy 99
Vancouver, WA 98665-8819

Tri-County Industrial Parks #6, LLC
c/o Gary Blacklidge, R.A.
Jordan Ramis PC
2 Centerpointe Dr 6th Fl
Lake Oswego, OR 97035-8618

Trimble, Cody
19605 SW Boones Ferry Rd., #34
Tualatin, OR 97062-8072

U.S. Small Business Administration
10737 Gateway West #300
El Paso, TX 79935-4910

U.S. Small Business Administration
1545 Hawkins Blvd Ste 202
El Paso, TX 79925-2654

U.S. Small Business Administration
Attn: Attorney General of U.S.
10th Constitution NW #4400
Washington, DC 20530-0001

U.S. Small Business Administration
Attn: Civil Process Clerk
U.S. Attorney s Office, Dist of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2936

U.S. Small Business Administration
Attn: Wesley J. Nell, Esq.
Oregon & Seattle District Offices
2401 Fourth Ave, Ste 400
Seattle, WA 98121-1430

US Trustee, Portland
1220 SW 3rd Ave., Rm. 315
Portland, OR 97204-2829

WCP Solutions
c/o Mike Powers
Barr Credit Services
4555 S Palo Verde Rd, Ste 125
Tucson, AZ 85714-1959

Washington County Dept of
Assessment & Taxation
c/o Ellen Rosenblum, Atty General
1162 Court St, NE
Salem, OR 97301-4095

Washington County Tax
Attn: Ryan Birch
155 N First Ave Rm 130
Hillsboro, OR 97124-3001

Washington County Tax Collector
155 N 1st Ave Suite 130
Hillsboro, OR 97124-3001

Wells Fargo Bank, N.A.
800 Walnut Street MAC F0005-055
Des Moines, IA 50309-3891

Wells Fargo Equipment Finance
600 South 4th ST 10th Fl
MAC N9300-100
Minneapolis MN 55415-1526

Wells Fargo Equipment Finance, Inc.
c/o Corporation Service Company, RA
1127 Broadway St, NE #310
Salem, OR 97301-1139

Wells Fargo Merchant Services
POB 17548
Denver, CO 80217-0548

West Coast Paper Company
Ray Patton
16705 NE Mason
Portland, OR 97230-7369

West Coast Paper Solutions
PO Box 84145
Seattle, WA 98124-5445

Worldwide Express
PO Box 733360
Dallas, TX 75373-3360

JESSIE YOUNG
DOJ-USAO
1000 SW 3rd Ave #600
Portland, OR 97204-2936

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

```
EBF Partners, LLC                    IRS                                    JPMorgan Chase Bank
dba Everest Business Funding          Attn: Attorney General of United States  7610 W Washington St
5 West 37th St., Ste. 1100            10th Constitution NW #4400              IN1-4000
New York, NY 10018                    Washington, DC 20530                    Indianapolis, IN 46231


Pawnee Leasing                        Revel Systems, Inc.
3801 Automation Way Ste 207           575 Market St, Ste 2200
Fort Collins, CO 80525                San Francisco, CA 94105
```

Addresses marked (c) above for the following entity/entities were corrected
as required by the USPS Locatable Address Conversion System (LACS).

```
Revel Systems, Inc.
c/o Timepayment Corporation
16 New England Executive Park
Ste 200
Burlington, MA 01803
```

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

```
(u)BeginRight, Inc.                   (u)Beneficial State Bank               (d)Carnie Wilson
                                                                             15028 SW Century Dr. Suite 200
                                                                             Sherwood, OR 97140-8327


(d)Carnie Wilson                      (u)Dial Temporary Help Service, Inc.   (u)Tiffany Miller
15028 SW Century Dr., Ste 200
Sherwood, OR 97140-8327


(u)QL Titling Trust LTD/Quality Leasing Co.,  (d)SBS Foods, Inc.             (u)Summit Staffing Solutions, Inc.
                                      c/o Parks Associates, PLLC, R.A.
                                      101 W Cataldo Ave Ste 200
                                      Spokane, WA 99201-3200


(d)Tiffany Miller                     (u)United States of America/ Small Business A  (u)Carnie Wilson
18104 Pilkington Rd
Lake Oswego, OR 97035-7046


End of Label Matrix
Mailable recipients    175
Bypassed recipients     12
Total                  187
```